KAMIE F. BROWN (8520)
KRISTINA M. DUBOIS (18908)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel: (801) 532-1500
Fax: (801) 532-7543
kbrown@rqn.com
kdubois@rqn.com

JUSTIN J. BORON (*admitted pro hac vice*)
KEVIN M. RINGEL (*pro hac vice forthcoming*)
**FREEMAN MATHIS & GARY, LLP**
1600 Market Street
Philadelphia, PA 19103-7240
Tel: (215) 789-4919
justin.boron@fmglaw.com
kevin.ringel@fmglaw.com

*Attorneys for Academy Mortgage Corporation*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAZARO STERN, CELESTE ALLEN, LISA KUCHERRY, PETER SMITH, and SHARON THOMPSON, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Case No. 2:24-cv-00015-DBB-DAO<br><br>Judge David B. Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Defendant Academy Mortgage Corporation ("AMC") moves to dismiss Plaintiffs Lazaro

Stern ("Stern"), Celeste Allen ("Allen"), Lisa Kucherry ("Kucherry"), Peter Smith ("Smith"), and

Sharon Thompson's ("Thompson") (collectively "Plaintiffs") Consolidated Class Action Complaint ("Amended Complaint"). Plaintiffs lack standing and have failed to state a claim upon which relief can be granted under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively.

## SPECIFIC RELIEF SOUGHT AND GROUNDS FOR RELIEF

This case arises from a data security incident that occurred when a third-party hacker launched a cyberattack on AMC's data security system. Plaintiff Thompson is a former AMC employee. Plaintiffs Allen, Stern, Kucherry, and Smith are customers of AMC. Plaintiffs attempt to bring this claim on behalf of themselves and a putative class asserting six claims: (1) negligence; (2) breach of implied contract; (3) unjust enrichment; (4) invasion of privacy; (5) violation of the Washington Consumer Protection Act; and (6) violation of the Idaho Consumer Protection Act. Plaintiffs' claims are unsupported and should be dismissed for three reasons.

*First*, the claims of Plaintiffs Stern, Allen, Kucherry and Thompson should be dismissed for lack of Article III standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure. These Plaintiffs do not allege any financial losses or actual misuse of personal identification information ("PII") caused by the March 2023 cybersecurity incident ("Incident").[1] Such "future harm" injuries alleged by these Plaintiffs do not meet Article III standing requirements. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F. 4th 365, 376 (1st Cir. 2023) (reconciling precedent based on post-*TransUnion* decisions); *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1071 (D. N.M. 2023) ("Without current guidance from the Tenth Circuit, other district courts in this circuit have

---

[1] Smith is the only Plaintiff to allege that his data was misused immediately following the data breach. Dkt. #41, ¶ 65. Plaintiffs do not allege any other misuse of their information.

followed the majority view concluding that a plaintiff does not suffer an injury in fact where their PII is accessed through a data breach but no direct harm results."). As succinctly stated by the U.S. Supreme Court in *TransUnion LLC v. Ramirez*, "No concrete harm. No standing." 594 U.S. 413, 417 (2021).

*Second*, each of Plaintiffs' claims improperly seeks injunctive relief. Such claims for injunctive relief should be dismissed. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Importantly, the threat of a future data breach does not satisfy this standard. *See Webb,* 72 F.4th at 378.

*Third*, even if Plaintiffs did have Article III standing, Plaintiffs' Amended Complaint should be dismissed under Rule 12(b)(6). Plaintiffs have not alleged an injury or damage for which the law recognizes a cause of action.

Accordingly, Plaintiffs' Amended Complaint should be dismissed in its entirety.

## ALLEGED FACTS

At the time of the Incident, Defendant AMC was a privately held, Utah-based mortgage lender serving customers across over 200 branches nationwide.[2] Amended Compl. ¶ 1, Dkt. #41. In March 2023, AMC was the victim of a criminal hack into part of its digital files. *Id*. ¶ 3. When AMC discovered unauthorized activity on its system, AMC immediately began containment, mitigation, and restoration efforts to terminate the activity and secure its network systems and data.

---

[2] AMC's assets (but not liabilities) were acquired by Guild Mortgage on or about February 13, 2024.

*Id.* ¶¶ 3-4. AMC notified about 284,000 customers and employees whose PII might have been accessible to the hacker. *Id.* ¶ 1. AMC also offered free credit monitoring.

Allen, Kucherry, and Smith are former AMC customers who AMC notified and to whom AMC offered credit monitoring. *Id.* ¶¶ 34-69. Allen, Kucherry, and Smith allege that as a condition of receiving mortgage services from AMC, they provided AMC with their PII, including but not limited to their names and Social Security numbers. *Id.* Thompson is a former employee of AMC who AMC notified and to whom AMC offered credit monitoring. *Id.* ¶¶ 70-82. Thompson alleges that she provided her PII to AMC in connection with her employment. *Id.* ¶ 71. Plaintiffs contend that they are "exposed to a present and imminent risk of fraud and identity theft" because "the PII that Defendant collected and maintained is now in the hands of data thieves." *Id.* ¶¶ 12, 14, 16. Plaintiffs further contend that they have suffered "a loss of privacy," an injury in the form of "damages to and diminution in the value of their PII*,"* and that they "will also be forced to expend additional time" remedying or mitigating the effects of the Incident. *Id.* ¶¶ 17, 103, 105, 184.

This is not the case. To the contrary, AMC underwent a complete forensic investigation which found no evidence that any sensitive information, including PII, had been misused. Regardless, out of an abundance of caution, on or about December 20, 2023, AMC issued a notice letter to certain potentially affected individuals. *Id.* ¶ 203.

Nonetheless, Plaintiffs bring this case on behalf of themselves and a putative class asserting six claims: (1) negligence; (2) breach of implied contract; (3) unjust enrichment; (4) invasion of privacy; (5) violation of the Washington Consumer Protection Act; and (6) violation of the Idaho Consumer Protection Act. All of Plaintiffs' claims are unsupported and should be dismissed for lack of Article III standing and failure to state a claim under Rule 12(b)(6).

## **LEGAL STANDARD**

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure allow for dismissal of a case where the complaint fails to establish subject matter jurisdiction or where the complaint fails to state a claim upon which relief can be granted. *Braun v. United States*, 2023 WL 6158943, *4 (D. Utah Sept. 21, 2023) (unpublished). To survive dismissal under Rule 12(b)(6), the complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## **ARGUMENT**

I. **PLAINTIFFS STERN, ALLEN, KUCHERRY AND THOMPSON LACK STANDING UNDER ARTICLE III TO BRING A CLAIM BECAUSE THEY HAVE NOT ALLEGED AN INJURY IN FACT.**

"Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Under this rule, *each* named plaintiff must show: (1) they have suffered an "injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Utah Physicians for a Healthy Env't, Inc. v. TAP Worldwide, LLC*, 582 F. Supp. 3d, 881, 891 (D. Utah Jan. 25, 2022) (Barlow, D.) (unpublished)

(quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). For traceability, a plaintiff must demonstrate a connection between their purported injury and the defendant's actions. *Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1184 (D. Utah May 5, 2023) (Barlow, D.).

"'Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy' under Article III . . . ." *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *3 (D. Utah May 20, 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)) (unpublished). "The Tenth Circuit 'has repeatedly characterized standing as an element of subject matter jurisdiction' and has held 'that a dismissal for lack of standing can be at least colorably characterized as a dismissal for lack of subject matter jurisdiction.'" *Id.* (quoting *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012)). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). At the pleading stage, a "plaintiff must 'clearly . . . allege facts demonstrating each element.'" *Id.* (alteration in original) (quoting *Spokeo*, 136 S. Ct. at 1547).

A.    **Plaintiffs' Allegations of Future Harm are Insufficient to Confer Standing.**

In *TransUnion*, a class of individuals sued a credit reporting agency, under the Fair Credit Reporting Act, for failing "to use reasonable procedures to ensure the accuracy of their credit files." 594 U.S. at 417. The Supreme Court concluded that 1,853 of the class members had standing, *i.e.*, they suffered "concrete reputational harm," because the agency provided their credit reports to third parties and that the reports wrongfully indicated that the persons had a name that potentially matched names on a list maintained by the U.S. Treasury Department's Office of

Foreign Assets Control for known or suspected terrorists, drug traffickers, and other such criminals. *Id*. at 417, 432. The Supreme Court also concluded that the remainder of the class members were unable to demonstrate they suffered concrete harm because their credit reports were not provided to any third-party. *Id*. at 417. Hence, those class members failed to show that they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *Id*. at 423.

Since *TransUnion,* federal courts have grappled with whether Article III standing permits a data breach claim based exclusively on the increased risk of future harm. Generally, courts have drawn the line between misuse of data and risk of future harm. Where there are facts supporting misuse of data, courts have found injury-in-fact. However, where there are no such facts except the allegation of the risk of future harm, courts have found no injury-in-fact. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155 (3d Cir. 2022); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021).

While the Tenth Circuit has not directly decided this issue, district courts within the Tenth Circuit have uniformly held in cases with nearly identical fact patterns, that future harm does not mean injury-in-fact and is insufficient to confer standing. *McCombs*, 676 F. Supp. 3d at 1071. For example, in *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985 (W.D. Okla. 2021), this question was squarely addressed. The plaintiff in *Legg*, like Plaintiffs here, did not allege that any misuse of the data occurred. *Id.* at 993. In denying the plaintiff's standing, the *Legg* court stated that damages based not on any actual fraud or identity theft that occurred because of the data breach, but on the risk that fraud or identity theft may occur in the future, cannot support standing for a damages claim. *Id.* Like Plaintiffs' claim of an increase in "spam calls," the closest the *Legg*

plaintiff came to "alleging misuse is a statement that there has been a 'dramatic increase in the amount and frequency of phishing emails she has been receiving over the last few months.'" *Id.* However, "the receipt of phishing emails, while perhaps 'consistent with' data misuse, does not 'plausibly suggest' that any actual misuse of Plaintiff's personal identifying information has occurred." *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, the court in *Legg* concluded that the plaintiff's allegations, at best, "lead to a plausible inference that at some unknown time in the future, some of the putative class members *may* be the victim of identity theft or fraud." *Id.* at 994. However, this "non-imminent risk of possible future injury following [a] data breach" is not sufficient to confer standing. *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). The court further stated that "[g]iven the holding in *TransUnion*, it is far from clear that any case finding a concrete injury based merely on an abstract risk of future identity theft following a data breach is still good law." *Id.* at 993.

Likewise, in *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064 (D. N.M. June 9, 2023), the court denied standing to an employee who brought a putative class action against her employer following a data breach of the employer's computer system, ruling that the plaintiff's allegations of potential risks of harm were too speculative to confer standing. The *McCombs* court held that the possibility that the plaintiff's "PII would be used by an unknown cybercriminal to potentially commit fraud or identity theft" was "premised on potential illegal activity yet to be committed (and which may never be committed) by an unknown third party." *Id.* at 1072. These alleged injuries were too speculative to invoke the court's jurisdiction. *Id.* (citing *Cooper v. Bonobos, Inc.*, No. 21-cv-854, 2022 WL 170622, at *1 (S.D.N.Y. Jan. 19, 2022) (dismissing claims arising from a data breach because "given the age and nature of the data, the risk of identity theft

or fraud is too remote to constitute injury in fact.")). The *McCombs* court also agreed with the *Legg* court's finding that increased spam communications following a data breach, without some supportive allegations, does not establish a causal link between the two. *Id.* at 1074.

In *Deevers Stoichev v. Wing Fin. Servs. LLC*, 22-CV-0550-CVE-JFJ, 2023 WL 6133181, at *5 (N.D. Okla. Sept. 19, 2023) (unpublished), the court noted that, while the Tenth Circuit has yet to consider the issue, many circuits have assessed whether plaintiffs have standing when they receive notice that their data may have been subject to a data breach, but have not faced actual harm. The court noted that the various circuits have relied on a variety of non-dispositive factors to determine whether an alleged future risk of identity theft is imminent, including but not limited to, ascertaining (1) whether the data breach was intentionally targeted; (2) whether the data was misused; and (3) whether the data accessed was of a particularly sensitive nature. *Id.* Applying these factors, the court found that the plaintiffs and the putative class did not establish standing based on an increased and imminent risk of identity theft, fraud, or misuse. *Id.*

Under all these authorities, Plaintiffs Stern, Allen, Kucherry and Thompson have not, and cannot, allege a concrete injury as required by law to establish standing. Importantly, there are no cases within the Tenth Circuit where a court has held that a plaintiff has standing to sue for damages solely based on the increased risk of identity theft. Plaintiffs' claims for damages based on future harm should be dismissed.

### B. Allegations of Incurring Mitigation Expenses are Insufficient to Confer Standing.

Plaintiffs have alleged that "[a]s a result of the [Incident]," they are now "exposed to a present and imminent risk of fraud and identity theft" because their PII "is now in the hands of data thieves," they are "forced to expend additional time" reviewing credit reports and monitoring

financial accounts (despite having a free 12-month subscription to credit monitoring services), they "spent and will continue to spend considerable time and effort monitoring [their] accounts to protect [themselves] from identity theft," and they are "forced to live with anxiety that [their] PII may be disclosed to the entire world . . . ." Dkt. #1, ¶¶ 17, 30, 203. However, all these categories of harm have been rejected for purposes of establishing standing under Article III. *Clapper*, 568 U.S. at 416 (holding plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *Legg*, 574 F. Supp. 3d at 994; *Masterson*, 2023 WL 8647157 at *7. Further, "[i]t is well established that 'plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1339 (11th Cir. 2021) (quoting *Clapper*, 568 U.S. at 416).

In the data breach context, Plaintiffs' efforts to mitigate the risk of future harm are not any more sufficient to confer standing than the risk of harm alone because the mitigation efforts are "inextricably tied to her perception of the actual risk of identity theft." *Tsao*, 986 F.3d at 1344. *See also In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) ("Because plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury."); *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 571 (D. Md. 2016) ("In the context of data breach litigation, courts have consistently held that a plaintiff may not use mitigation costs alone to establish a cognizable injury in fact."). Plaintiffs may not bootstrap one speculative injury to another to confer standing on themselves.

**C.      Allegations of Diminution of Value are Insufficient to Confer Standing.**

Plaintiffs' diminution-of-value theory fares no better. For example, in *Chambliss v. Carefirst, Inc.*, the case involved a data breach of CareFirst, a health insurance provider, that compromised individuals' data including "the names, birth dates, email addresses, and subscriber identification numbers of the affected individuals." 189 F. Supp. 3d 564, 567 (D. Md. 2016). The *Chambliss* court held that it "need not decide whether such personal information has a monetary value, as Plaintiffs have not alleged that they have attempted to sell their personal information or that, if they have, the data breach forced them to accept a decreased price for that information." *Id*. at 572. Likewise, Plaintiffs here have not made such allegations, and a diminution in value claim cannot confer standing.

Similarly, in *Khan v. Children's Nat'l Health Systems*, the court rejected plaintiffs' allegations that they suffered loss of value in their personal identifying information. 188 F. Supp. 3d 524, 533-34 (D. Md. 2016). That case involved a data breach at a hospital that compromised patient information including "names, addresses, dates of birth, Social Security numbers, and telephone numbers, as well as private health care information." *Id.* at 527. The court rejected the plaintiff's damages theory because the plaintiff did not "explain how the hackers' possession of that information has diminished its value, nor does she assert that she would ever actually sell her own personal information." *Khan*, 188 F. Supp. 3d at 533. Plaintiffs here have not alleged how the value in their property has dropped or that they would ever actually sell their data to sustain a diminution in value claim.

### D. Plaintiffs Stern, Allen, Kucherry and Thompson Cannot Ride Plaintiff Smith's Coattails to Establish Standing.

Plaintiffs cannot argue that Smith's injury is sufficient to give all of them standing. Doing so would violate the U.S. Supreme Court's instruction in *TransUnion* that every class member and every plaintiff must have its own independent "Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431. Plaintiffs Stern, Allen, Kucherry and Thompson lack present injury, and cannot simply ride the coattails of Smith to establish standing.

For these reasons, the Court should therefore dismiss the claims of Plaintiffs Stern, Allen, Kucherry, and Thompson for lack of Article III standing.

## II. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF.

Each of Plaintiffs' claims improperly seek injunctive relief. *E.g.*, Dkt. #41, ¶¶ 19, 223, 225, 244, 260. Such claims for injunctive relief should be dismissed. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. Injunctive relief must be based on a future injury that "is sufficiently imminent and substantial." *Id*. at 435. In a data breach case, standing for injunctive relief is nearly impossible to find because there are generally no plausible allegations to be made that being subject to a "<u>prior</u> data breach might make a <u>future</u> data breach more likely." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th at 378. An injunction requiring a defendant to "improve its cybersecurity systems cannot protect the plaintiffs from future misuse of their PII by the individuals they allege now possess it." *Id*.[3]

---

[3] To be clear, AMC underwent a complete forensic investigation which found no evidence that any sensitive information, including PII, had been misused.

Plaintiffs' allegations here for injunctive relief are no different than those rejected in *Webb*. Plaintiffs ask for an injunction requiring AMC to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class members. Dkt. #41, ¶ 244. Like *Webb*, and consistent with *TransUnion*, the Court should dismiss Plaintiffs' claims seeking injunctive relief. Plaintiffs lack standing to pursue injunctive relief because such relief are "not likely to redress their alleged injuries." *Webb*, 72 F. 4th at 378.

## III. EVEN IF PLAINTIFFS HAD STANDING, PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6).

Plaintiffs lack standing and their claims must be dismissed in their entirety pursuant to Rule 12(b)(1). Even if Plaintiffs did have standing to bring their claims, however, Plaintiffs' Amended Complaint must be dismissed for failure to state a cause of action under Rule 12(b)(6).

### A. The Court Should Dismiss Plaintiffs' Negligence Claim in Count I.

#### 1. Utah law does not recognize a cause of action for Plaintiffs' claims to recover damages based on the risk of future harm.

It is fundamental hornbook law that negligence requires present harm. "The harm requirement is one of the most fundamental tenets of negligence law: the tort is incomplete and there can be no legal redress without proof of actual damage." Yehuda Adar & Ronen Perry, *Negligence Without Harm*, 111 Geo. L.J. 187, 188 (2022) (citing the leading and contemporary authorities on tort law to affirm that "the harm requirement is a general characteristic of tort law"). "Mere exposure to risk, even when it is foreseeable and unreasonable, is not actionable." *Id*. Because "[m]aterialization of risk" is "central to an action in negligence," "courts are staunchly reluctant to grant relief when plaintiffs bring such actions for the mere creation or enhancement of

risk." *Id.* at 192. There is no basis for the Court to recognize Plaintiffs' unsustainable cause of action for increased risk of harm.

In the last 50 years, only one exception has been made to the requirement of showing present harm: medical monitoring in toxic tort cases. *See Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993). Only after a careful public policy discussion, the *Hansen* Court permitted an independent cause of action for medical monitoring, but only when a plaintiff can prove exposure to a "toxic substance" caused by the defendant's negligence that produced an increased risk of illness where a medical test exists allowing early detection. *Id.* This very narrow exception does not extend to data breach cases or the injuries Plaintiffs allege here.

Under Utah law, Plaintiffs' alleged negligence cause of action does not exist. There is no recognized cause of action for monitoring against the increased risk of future identity theft. Plaintiffs' damages claims primarily seek alleged costs that have not yet accrued (and that cannot be proven). Dkt. #1, ¶¶ 12, 14, 16, 35, 47, 59, 71, 103, 184. Plaintiffs allege that they will incur such costs in the future. Plaintiffs have not alleged facts that would support a finding that the data security incident was the proximate cause of such future, uncertain, and unlimited damages. *Id.* at 203. Plaintiffs' claims for the value of future risk are not viable.

Therefore, the Court should grant AMC's motion to dismiss.

## 2. The Court should dismiss Plaintiffs' negligence claim because it is barred by the Economic Loss Rule.

To recover on a claim for negligence in Utah, a plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the breach of duty was the proximate cause of the plaintiff's injury; and (4) that the plaintiff in fact suffered injuries or damages. *Gonzalez*, 2012 UT App 154, ¶ 20. However, even if a plaintiff

can prove those elements, the economic loss rule prevents a plaintiff's recovery in tort for damages of a purely economic nature. *Reighard v. Yates*, 2012 UT 45, ¶ 14. The economic loss rule marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care. *Id.* ¶ 19. The economic losses covered by the economic loss rule are:

> [d]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property . . . as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.

*Id.* ¶ 20. Under such circumstances, the contract is the exclusive means of obtaining economic recovery. *Id.* Whether the economic loss rule applies depends on "whether a duty exists independent of any contractual obligations between the parties." *Id.* ¶ 21.

Plaintiffs' negligence claims are barred by the economic loss doctrine because the only cognizable injury they have alleged is financial loss, which, if viable, can be redressed only by their implied contract theory. *Id.* ("[O]nce there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract. All contract duties, and all breaches of those duties . . . must be enforced pursuant to contract law.") (quoting *Grynberg v. Questar Pipeline Company*, 2003 UT 8, ¶ 43). Plaintiffs' Amended Complaint alleges purely economic losses. Such claims are barred by the economic loss doctrine. *Id.* ¶¶ 19-22.

**3.** **The Court should dismiss Plaintiffs' negligence claim because AMC did not owe a duty to protect Plaintiffs from unforeseeable hacks into AMC's System.**

The duty of care owed under Utah law is "the degree of care which a reasonable person would have exercised under the same circumstances." *Barson v. E.R. Squibb & Sons*, 682 P.2d 832, 835 (Utah 1984). In Utah, while there is a duty to protect business invitees from criminal acts by third parties, "the duty does not arise until the business owner knows, or should know, that criminal acts are likely to occur." *Steffensen v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1344-45 (Utah 1993). Otherwise, the crime is not foreseeable as a matter of law. *Id.* Plaintiffs have not alleged any facts that would allow the Court to conclude AMC either knew or had reason to know that its data system was susceptible or at risk to third party criminals. As such, the Court should dismiss Plaintiffs' negligence claims for this reason as well.

To allege a claim of negligence based on a data breach, plaintiff must plausibly allege the breach ***and*** that the defendant caused the breach by failing to reasonably protect the subject data. *See, e.g., In re Waste Mgt. Data Breach Litig.*, 2022 U.S. Dist. LEXIS 32798, *13-14 (S.D.N.Y. Feb. 24, 2022) ("*Waste Mgt.*") (unpublished). Here, Plaintiffs have not sufficiently alleged the absence of reasonable conduct.

In *Waste Mgt.*, the Southern District of New York evaluated a negligence claim arising from a data breach, brought by current and former employees against USA Waste-Management ("Waste Management") based on a cyberattack that may have compromised employee PII. *Id.* *10-14. The plaintiffs' complaint included "many conclusory allegations that Waste Management failed to take reasonable measures to protect its data," but pled no facts "regarding any specific measures that Waste Management did or didn't take, nor [did] it contain any allegations regarding

the manner in which their systems were breached." *Id*. \*12. In essence, the complaint sought to "hold Waste Management liable for the fact of the data breach alone." *Id*. \*13. That allegation was insufficient to save the negligence claim. *Id.* \*14.

Here, Plaintiffs allege AMC had a duty to "exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control" and "should have identified the vulnerability to its systems and prevented" the Incident from occurring." Dkt. #41, ¶ 231. Plaintiffs fail to support these allegations with specific measures that AMC could have taken, that AMC failed to take, and that would have prevented the data security incident. Spread throughout the Amended Complaint, there are dozens of references to AMC's alleged lapse in using "adequate" security measures. But not once do Plaintiffs say specifically what concrete measure would have prevented a third-party criminal from infiltrating its system. Under *Waste Management*, Plaintiffs' allegations fail to support their negligence claims. Accordingly, this claim should be dismissed.

**B.    The Court Should Dismiss Plaintiffs' Breach of Implied Contract Claim in Count II Because Plaintiffs Fail to Allege Any Material Terms and Conditions Sufficient to Sustain Their Claim.**

The elements of a prima facie case for breach of contract are (1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages. *Syme v. Symphony Group LLC*, 2018 UT App 212, ¶ 23. Whether a contract exists between parties is ordinarily a question of law. *Id.* ¶ 13. For a binding contract to exist, it must be shown that the parties had a meeting of the minds as to the integral features of the agreement and that the terms are sufficiently definite as to be capable of being enforced. *Id.* A contract implied in fact is a "contract" established by conduct. *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987). "The elements of a contract implied in fact are (1) the defendant requested the plaintiff to perform work;

(2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation." *Id.*

Here, Plaintiffs fail to meet this standard. Plaintiffs allege that an implied contract was formed on the mere act of providing their PII to AMC. Dkt. #41, ¶ 247. AMC, in receiving the PII, allegedly became obligated to reasonably safeguard Plaintiffs' and other Class Member's PII. *Id.* This barebones recital is the full extent of Plaintiffs' allegations regarding the formation of an implied contract. Simply put, the Amended Complaint is devoid of the basic facts necessary to put AMC on notice of what contract it allegedly breached. Further, there was never a meeting of the minds as to the integral features of the supposed agreement(s). Moreover, simply stating that an implied contract existed is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thompson, a former employee of AMC, has not alleged any material terms of her employment contract with AMC, other than supposedly safeguarding her PII. That, by itself, cannot sustain a breach of implied contract claim. *See Longenecker-Wells v. Benecard Servs. Inc.,* 658 F. App'x 659, 662 (3d Cir. 2016) ("Plaintiffs have failed to plead any facts supporting their contention that an implied contract arose between the parties other than that [Defendant] required Plaintiffs' personal information as a prerequisite to employment. This requirement alone did not create a contractual promise to safeguard that information, especially from third party hackers.").

Courts in data breach cases "have consistently held that the fact that a defendant required plaintiffs to provide personal information does not alone support the inference that the parties agreed for the defendant to secure this information." *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.,* 2021 WL 5937742, 2021 U.S. Dist. LEXIS 240360, *69 (D.N.J. Dec. 16, 2021) (unpublished) (dismissing plaintiffs' claim for breach of implied contract where plaintiffs

paid defendants to perform healthcare services and defendants incidentally required personal information to ensure they received payment through plaintiffs' insurers.); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *8 (S.D. Ohio Sept. 29, 2023) (finding the plaintiffs' threadbare allegation that they and the defendant entered into an implied contract whereby the defendant would safeguard and protect the plaintiffs' PII insufficient for purposes of avoiding a motion to dismiss their breach of implied contract cause of action); *Weekes v. Cohen Cleary P.C.*, No. CV 23-10817-NMG, 2024 WL 1159642, at *5 (D. Mass. Mar. 15, 2024) ("Indeed, the vast majority of commercial transactions today require the disclosure of PII;" that PII was provided as a condition of enrollment, employment or service is "insufficient to support an implied contract claim.").

    **C.**    **The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim in Count III Because Plaintiffs Do Not Allege How AMC Benefited From Receiving Their Private Information.**

To prevail on a claim for unjust enrichment, three elements must be met. *Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13. First, there must be a benefit conferred on one person by another. *Id.* Second, the conferee must appreciate or have knowledge of the benefit. *Id.* Third, there must be "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Id.* While some courts have recognized that victims of a data breach may be able to state a claim for unjust enrichment "in situations where businesses commoditize or receive an independent pecuniary benefit from holding the Personal Information," *American Medical,* 2021 U.S. Dist. LEXIS 240360, at *18, that is not the case here.

Plaintiffs fail to allege how AMC benefited from receiving Plaintiff's private information. The Amended Complaint simply provides a conclusory statement that AMC "benefited from the receipt of Plaintiffs' and the Class's PII" for "business purposes" while Plaintiff and the class should have had their PII protected with adequate data security. Dkt. #41, ¶¶ 264, 265. This is insufficient to show that AMC was in any way enriched at the expense of Plaintiffs. Specifically, Plaintiffs do not allege that AMC received any independent pecuniary benefit from the retention of Plaintiffs' PII. Courts in data breach matters nationwide have held that a traditional exchange of payment for goods and services is not a circumstance in which it is "unjust" to allow the defendant to retain the benefit. *See, e.g.*, *Tate*, 2023 WL 6383467, at *8. Further, in a data breach case, the plaintiff must allege that they "paid extra for a security package that they were promised and did not receive." *Webb, LLC*, 2023 WL 5938606, at *4 (citing *In re Target Corp. Data Sec. Breach Litig.,* 66 F. Supp. 3d 1154 (D. Minn. 2014). Here, Plaintiffs got what they paid for – mortgage services. *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) ("Plaintiffs paid for burritos; Plaintiffs received burritos."). Because AMC was not unjustly enriched by Plaintiffs' payments for mortgage services, this claim is implausible on its face.

Moreover, Thompson was an employee of AMC. There is no logical reason why AMC would have benefited from receiving and retaining her private information. Plus, unlike the circumstances where AMC was paid a fee by customers for its services, no such fee is alleged to have been paid by Thompson in connection with her employment. As AMC cannot have retained any money or the value of benefits belonging to Thompson or other AMC employees, AMC cannot plausibly have been enriched by the retention of Thompson's private information.

For all of these reasons, Count III should be dismissed with prejudice.

**D. The Court Should Dismiss Plaintiff's Invasion of Privacy Claim in Count IV Because AMC Committed No Intentional Interference in Plaintiff's Private Affairs That Was "Highly Offensive."**

Under Utah law, to establish a claim of intrusion upon seclusion, the plaintiff must prove two elements by a preponderance of the evidence: (1) that there was "an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party," and (2) that the intrusion "would be highly offensive to the reasonable person." *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997). Examples provided as to the type of conduct that support a finding of an intrusion include eavesdropping upon private conversations by means of wiretapping and microphones, peering into the windows of a home, and persistent and unwanted phone calls. *Id.*

Plaintiffs fail to allege the required elements to find an intrusion. Here, the nature of Plaintiff's Amended Complaint is that AMC failed to protect Plaintiffs' and the Class Members' PII by allowing a threat actor to access its computer systems. There is no intentional act by AMC to intrude into Plaintiffs' private matters. Further, there is no conduct on the part of AMC that in any way could be construed to be "highly offensive to the reasonable person," especially since there was no intentional act by AMC to intrude into Plaintiffs' private affairs.

Moreover, courts have held in data breach cases that when plaintiffs allege an invasion of privacy as a standalone injury, such an allegation is inadequate "without factual support that any third parties actually viewed or will imminently view their data." *Taylor v. UKG, Inc.*, 2023 WL 8291834, at *7 (D. Mass. Sept 15, 2023). Here, Plaintiffs do not allege that the threat actor or any other unauthorized individual has viewed *their* personal information. Thus, the Court should dismiss Plaintiffs' invasion of privacy claim in Count IV.

**E.** **The Court Should Dismiss Plaintiffs' Claim for Violation of the Washington Consumer Protection Act ("WCPA") in Count V Because Plaintiffs Lack Standing to Bring This Claim and Plaintiffs Fail to Allege Damages Caused by AMC's Alleged Conduct and Omissions.**

For a claim under the WCPA, the plaintiff must establish all of five elements: "(1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interests, and (4) the plaintiff sustained injury to business or property that was (5) caused by the unfair or deceptive act or practice." *Keodalah v. Allstate Ins. Co.,* 194 Wash. 2d 339, 349-50 (Wash. 2019). Trade and commerce narrowly include "entrepreneurial or commercial aspects of professional services" including how the cost of services are "determined, billed and collected" and the way a professional "obtains, retains, and dismisses clients." *Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 603 (Wash. 2009) (citing *Ramos v. Arnold*, 141 Wash. App. 11 (Wash. 2007)). Additionally, the factors for whether the unfair or deceptive practice impacts public interest are: "(1) whether defendant committed alleged acts in the course of [its] business; (2) whether the defendant advertised to the public in general; (3) whether defendant actively solicited this particular plaintiff, and (4) whether [the parties] have unequal bargaining positions." *Trujillo v. Northwest Tr. Servs., Inc.*, 183 Wash. 2d 820, 836 (Wash. 2015).

Here, Plaintiffs concede that they "paid for mortgage services or other services" to AMC. Dkt. #41, ¶ 263. AMC is not a cybersecurity-as-a-service company, and its business was limited to mortgage lending. Therefore, Information Security is not a service for which Plaintiffs paid AMC nor are AMC's cybersecurity measures included in the determination, billing, and collection for the cost of its service (mortgage lending). Here, Plaintiffs do not allege any facts that showed AMC "actively solicited" them. Plaintiffs and AMC did not have unequal bargaining power because Plaintiffs had the persistent right and capability to seek mortgage services elsewhere.

Plaintiffs have failed to properly allege the elements necessary to sustain a claim under WCPA. Accordingly, Count V should be dismissed.

**F.      The Court Should Dismiss Plaintiffs' Claim for Violation of the Idaho Consumer Protection Act ("ICPA") in Count VI Because Plaintiffs Fail to Allege an Unfair Act and Actual Damages Caused by AMC.**

To sustain a claim under the ICPA, a consumer must establish three elements: "(1) the consumer purchased goods or services from a seller; (2) the seller engaged in unfair or deceptive act(s) or practice(s) that are declared unlawful under the ICPA; and (3) the unfair act(s) or practice(s) caused the consumer to suffer an ascertainable loss of money or property (real or personal)." *Pickering v. Sanchez*, 544 P.3d 135, 142 (Idaho 2024). The second element, an "unlawful" act or practice under the ICPA, includes "engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." *Tricore Invs., LLC v. Est. of Warren through Warren*, 485 P.3d 92, 114 (Idaho 2021). The third element requires an "ascertainable loss of money or property, real or personal, as a result of the use" of the act or practice declared unlawful by the ICPA. Idaho Code Ann. § 48-608(1).

As to the first element, AMC recognizes that Plaintiff Kucherry and the Idaho subclass received services from AMC in the form of mortgage lending. However, Plaintiffs do not meet elements two and three. Plaintiffs' only allegation under the ICPA is that Kucherry and the Idaho subclass "would have not sought services" from AMC had they been aware of the "omitted and misrepresented facts, *i.e.*, that [AMC] would not adequately protect their PII." Dkt. #41, ¶ 294.

Plaintiffs do not allege any facts or identify the unfair or unlawful act AMC committed. AMC offers mortgage services. Like the WCPA claim in Count V, Plaintiffs do not allege AMC offered services or advertised any information regarding AMC's data security to induce trade, sell,

or represent the quality of mortgage services offered that could have led to a misrepresentation or deception. This is wholly insufficient to sustain a claim.

Finally, the ICPA requires a showing of actual damages, which Plaintiffs lack. Kucherry and the Idaho subclass do not allege any ascertainable monetary harm. Plaintiffs' barebones allegation fails to demonstrate any causation between any alleged unfair act and any alleged harm.

Hence, Count VI should be dismissed with prejudice as Plaintiffs fail to state an ICPA claim under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, AMC respectfully requests that this Court grant its Motion to Dismiss the Plaintiffs' Amended Complaint in its entirety.

DATED this 9th day of September 2024.

RAY QUINNEY & NEBEKER P.C.

  /s/ Kamie F. Brown
Kamie F. Brown
Kristina M. DuBois

Justin J. Boron (*pro hac vice*)
Kevin M. Ringel (*pro hac vice forthcoming*)
**FREEMAN MATHIS & GARY, LLP**

*Attorneys for Academy Mortgage Corporation*