KAMIE F. BROWN (8520)
KRISTINA M. DUBOIS (18908)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel: (801) 532-1500
kbrown@rqn.com
kdubois@rqn.com

JUSTIN J. BORON (*pro hac vice* )
KEVIN M. RINGEL (*pro hac vice* forthcoming)
**FREEMAN MATHIS & GARY, LLP**
1600 Market Street
Philadelphia, PA 19103-7240
Tel: (215) 789-4919
justin.boron@fmglaw.com
kevin.ringel@fmglaw.com

*Attorneys for Academy Mortgage Corporation*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| LAZARO STERN, CELESTE ALLEN, LISA KUCHERRY, PETER SMITH, and SHARON THOMPSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | **REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00015-DBB-DAO<br><br>Judge David Barlow |

Pursuant to Rules 7 and 12 of the Federal Rules of Civil Procedure, Defendant Academy Mortgage Corporation ("AMC") submits this Reply in support of its Motion to Dismiss Plaintiffs' Complaint (the "Motion").

**ARGUMENT**

I.   **PLAINTIFFS FAIL TO PROVIDE ANY SHOWING OF AN INJURY-IN-FACT THAT IS "FAIRLY TRACEABLE" TO THE INCIDENT.**

In their Opposition, Plaintiffs fail to satisfy the traceability element necessary to establish standing. The Supreme Court has made clear "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Each named "plaintiff must show (1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the **injury is fairly traceable to the challenged action of the defendant**; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Utah Physicians for a Healthy Env't, Inc. v. TAP Worldwide, LLC*, 582 F. Supp. 3d 881, 891 (D. Utah 2022) (emphasis added). "[F]or traceability, [a plaintiff] must demonstrate a connection between their purported injury and [the defendant's] actions." *Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1184 (D. Utah 2023). Plaintiffs aver no injury in fact that is "fairly traceable" to the incident. Plaintiffs' only mention of traceability is a conclusory reference to a single Plaintiff, Peter Smith, whose identity theft, Plaintiffs argue without any evidence, "is plainly traceable to Academy's Data Breach because the 'disclosure of social security numbers, birth dates, and names is more likely to create a risk of identity theft or fraud.'" Opp'n at 7, Dkt. #50. Smith alleges his identity was stolen after the data breach but does not and cannot allege that any such theft was related to or caused by the data breach. Compl. ¶ 65, Dkt. #41. Such allegations are insufficient.

Plaintiffs cite an unpublished Colorado case for the proposition that disclosure of personal information "is more likely to create a risk of identity theft or fraud." *Maser*, 2024 U.S. Dist. LEXIS 102196, at *12. Plaintiffs' argument fails for three reasons. First, Plaintiffs have not sufficiently alleged which, if any, of Smith's PII was accessed or used in the alleged identity theft.

There is no evidence that any PII was misused as a result of the data breach. Second, after failing to allege which of Smith's PII was accessed or taken, Plaintiffs provide no factual support for their conclusory statement that Smith's identity theft "is plainly traceable to Academy's Data Breach." Opp'n at 7, Dkt. #50. These allegations are insufficient, and no factfinder could plausibly reach that conclusion. Third, Plaintiffs' reliance on an unpublished case from Colorado ignores the relevant case law from this District. In *Alfwear,* this Court reiterated the requirement that, to satisfy the traceability requirement, Plaintiffs "must show 'a causal connection between the injury and the conduct complained of – the injury has to be fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'" 672 F. Supp. 3d at 1184 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The court found that the traceability requirement was not met when no "but for" cause was established. *Id.* Similarly, Plaintiffs' conclusory statement that it "is more likely" Smith's information was used is entirely speculative. The Court should dismiss the Complaint.

II.     **PLAINTIFFS FAIL TO ALLEGE AN "INJURY-IN-FACT."**

Aside from Smith, Plaintiffs do not allege a current injury yet assert they have standing due to: (1) increased risk of future harm, (2) actual misuse of a single Plaintiff's PII, (3) violation of privacy rights, (4) emotional injuries, (5) diminution in value of their PII, and (6) lost time and mitigation efforts. These are insufficient allegations to establish standing for each Plaintiff.

A.     **Alleged Increased Risk of Future Harm Is Insufficient to Confer Standing.**

According to *TransUnion*, the risk of unmaterialized future harm is not concrete harm that can confer standing. 594 U.S. at 431. Plaintiffs recognize this fatal flaw as to claims made by Stern, Allen, Kucherry, and Thompson, but attempt to save their cases from dismissal and mischaracterize the unambiguous mandate from *TransUnion*: that "*[e]very* class member must

have Article III standing in order to recover individual damages." *Id.* (emphasis added). District courts within the Tenth Circuit have consistently held that future harm does not equal injury-in-fact and is insufficient to confer standing. Plaintiffs incorrectly rely on two Colorado district court cases – *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231 (D. Colo. Sept. 26, 2018) and *Maser*. Regarding *Gordon*, Plaintiffs mischaracterize the *Engl* court's summation of case law addressing consumer data breach cases, risk of future harm, and standing. In *Engl*, the court explained that "[a] plaintiff demonstrates a cognizable Art. III injury, based on the risk of exposure to future fraudulent purchases or identity theft, *by showing* that: (i) his or her . . . financial or personal data was exposed to hackers in a data breach, and (ii) that there is *reason to believe that the hackers or others are making actual fraudulent use of the purloined data*." *Gordon*, 344 F. Supp. 3d at 1241 (emphasis added) (quoting *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-cv-02129, 2016 WL 8578252, at *6 (D. Colo. Sept. 21, 2016)). Here, Plaintiffs do not allege facts demonstrating that their PII is being fraudulently used by the third-party hacker or others. *Id.* Plaintiffs' reliance on *Maser* is similarly misguided. Besides making the conclusory allegation that "[t]hese risks are both certainly impending and substantial," Plaintiffs do not allege any facts showing that the risk of future harm is "substantial" nor "certainly impending." This is insufficient.

      **B.**      **Alleged Misuse of Smith's PII Is Insufficient to Confer Standing.**

Plaintiffs incorrectly rely on cases like *Gordon* to argue that "all plaintiffs have Article III standing so long as at least one plaintiff suffered misuse of their PII (e.g., identity theft and fraud)." Opp'n at 6, Dkt. #50. Crucially, this statement predates *TransUnion*. Whatever import the *Gordon* holding had previously, it cannot withstand the United States Supreme Court's express mandate to the contrary. *TransUnion*, 594 U.S. at 431. To the extent the other cases relied upon by Plaintiffs are inconsistent with *TransUnion*, they should likewise be disregarded.

## C. Alleged Privacy Violations Are Insufficient to Confer Standing.

Plaintiffs incorrectly cite two cases in support of their argument that the alleged violation of their privacy rights establishes injury-in-fact–*Lupia v. Medicreditc, Inc.*, 8 F.4th 1184 (10th Cir. 2021) and *Gadelhawk v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2020). These cases analyze the issue in the context of alleged violation of certain privacy statutes. *See generally Lupia*, 8 F.4th 1184 (analyzing claims brought by plaintiff under Fair Debt Collection Practices Act); *Gadelhawk*, 950 F.3d 458 (analyzing claims brought by plaintiff under Telephone Consumer Protection Act). By contrast, Plaintiffs here allege privacy violations under a common law tort claim for invasion of privacy. As such, the alleged privacy violations may only serve as a basis for standing for Plaintiffs' invasion of privacy claim. *Lupia*, 8 F.4th at 1190 ("We address standing on a claim-by-claim basis."). Plaintiffs fail to demonstrate that the privacy violations confer standing because they have not identified any specific damages arising from the alleged violations.[1]

## D. Plaintiffs' Alleged Emotional Injuries Are Insufficient to Confer Standing.

Plaintiffs claim "anxiety, stress, and frustration as a result of the Data Breach." Opp'n at 13, Dkt. #50. Plaintiffs plead no facts supporting this conclusory statement. *See Garland v. Orlans, PC*, 999 F.3d 432, 439-40 (6th Cir. 2021) (allegations of emotional harm are only actionable where they are extreme). To the extent Plaintiffs claim emotional distress because of the risk of future

---

[1] *See C.C. v. Med-Data Inc.*, No. 21-2301, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022) ("In sum, plaintiff's standing problem here is a familiar one: she hasn't alleged any concrete or particularized harm from her alleged loss of privacy. Her loss of privacy, in and of itself, is not a concrete harm that can provide the basis for Article III standing."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) ("Second, [Plaintiff] argues that the data breach has caused a loss of privacy that constitutes an injury in fact. However, she has not identified any potential damages arising from such a loss and thus fails to allege a 'concrete and particularized injury.'" (quoting *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015)). Plaintiffs have not alleged that their PII has even been viewed by an unauthorized third party. *See Masterson v. IMA Fin. Grp., Inc.*, 2023 WL 8647157, at *7 (D. Kan. Dec. 14, 2023) ("To sustain an injury based on loss of privacy, other courts have required some allegation that personal information has been viewed or 'exposed in a way that would facilitate easy, imminent access.' Here, however, Plaintiffs only generally allege a loss of privacy simply because there was a data breach. There are no allegations that the PII and PHI at issue was even viewed. These allegations do not create standing.")

misuse, this is insufficient. A plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Speculative allegations of emotional distress are also insufficient. *Garland*, 999 F.3d at 440 ("Garland's anxiety is too speculative to qualify as an injury in fact because it is merely a fear of a future harm that is not 'certainly impending' – an injury insufficient under Supreme Court precedent." (quoting *Clapper*, 568 U.S. at 410)).

    E.    **The Claimed Diminished Value of Plaintiffs' PII Is Insufficient for Standing.**

*In re Marriott Int'l, Inc. v Customer Data Sec. Breach Litig.*, on which Plaintiffs rely, the court states that the value of PII stems from "the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check." 440 F. Supp. 3d 447, 462 (D. Md. 2020). Even if diminution in the value of their PII were sufficient to confer standing, Plaintiffs have not alleged how, if at all, they have been deprived of the use or economic value of their PII, e.g., by being denied a line of credit, receiving less favorable transaction terms, or being refused any sort of transaction wherein PII is required. Thus, Plaintiffs have failed to demonstrate an injury-in-fact due to alleged diminution in value. *Id.*[2]

    F.    **Plaintiffs' Alleged Mitigation Expenses Are Insufficient to Confer Standing.**

District courts in the Tenth Circuit hold that mitigation expenses are insufficient to confer standing in data breach cases.[3] And, even courts that have determined mitigation efforts are

---

[2] *Moore v. Centrelake Med. Grp., Inc.*, 299 Cal. Rptr. 3d 544, 564 (Cal. Ct. App. 2022) ("[Plaintiffs] did not allege they ever attempted or intended to participate in this market or otherwise to derive economic value from their PII. Nor did they allege that any prospective purchaser of their PII might learn that their PII had been stolen in this data breach and, as a result, refuse to enter into a transaction with them, or insist on less favorable terms. In the absence of any such allegation, [Plaintiffs] failed to adequately plead that they lost money or property . . . of the value of their PII.").

[3] *See McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1072-73 (D.N.M. 2023) ("[T]he costs [Plaintiff] incurred in response to the Delta data breach are a product of her apprehension of speculative future harm. [Plaintiff's] efforts monitoring her accounts and safeguarding her PII are not a defense against a concrete or imminent threat.

sufficient did so only when there was a "substantial risk" of future harm.[4] Plaintiffs' conclusory allegation that "[t]hese risks are both certainly impending and substantial" does not allege facts demonstrating the risk of future harm is "substantial" nor "certainly impending." Compl. ¶ 171.

### III. PLAINTIFFS LACK STANDING FOR INJUNCTIVE RELIEF CLAIMS.

The Court should reject all five Plaintiffs' claims for injunctive relief based on lack of standing: "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, at 435. Critically, the threat of a future data breach does not satisfy this standard. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023).

### IV. PLAINTIFFS' CONSOLIDATED COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

#### A. Plaintiffs Fail to State a Claim for Negligence.

The Court should dismiss Plaintiffs' negligence claim in Count I because (1) Plaintiffs have not sufficiently alleged damages; (2) the negligence claim is barred by the economic loss doctrine; and (3) AMC did not owe a duty to protect Plaintiffs from unforeseeable hacks into AMC's system.

1. <u>Plaintiffs Do Not Sufficiently Allege Damages</u>.

Plaintiffs do not dispute that Utah law disallows the recovery of damages for risk of future harm. Plaintiffs merely point to the laundry list of damages from their Complaint, including mitigation expenses, anxiety and emotional distress, stating "courts often find that these types of

---

Accordingly, [Plaintiff's] manufactured harm does not give rise to standing." (citations omitted)); *Masterson*, 2023 WL 8647157, at *6 ("Time spent monitoring accounts is a concrete injury if it is based on a threat of future injury that is certainly impending. . . . Plaintiffs' fear of future injuries is only hypothetical. Actions taken based on a hypothetical future threat does not create a concrete injury. Accordingly, the time Plaintiffs have spent monitoring their accounts does not establish standing." (cleaned up) (citations omitted)).

[4] *Maser*, 2024 WL 2863579, at *6 ("[M]erely alleging . . . mitigation expenses – without alleging a substantial risk of future fraud – does not in itself satisfy the concrete injury requirement."); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F. 3d 613, 622 (4th Cir. 2018).

damages are compensable in data breach class actions." Opp'n at 13, Dkt. #50. However, such categories of damages have been rejected. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013).

*Mitigation Efforts.* Plaintiffs allege that they "have spent time dealing with the Data Breach" and "lost time and money incurred to mitigate and remediate the effects of the Data Breach." Opp'n at 13, Dkt. #50. Time spent obtaining credit reports and monitoring credit and accounts is insufficient. Rather, "tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages." *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020). "Plaintiffs' allegations of lost time addressing the data breach, continued risk to their PII . . . , and the danger of future harm are not cognizable injuries for negligence claims." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 46 (D. Ariz. 2021). Importantly, AMC offered Plaintiffs free credit monitoring services. Thus, while Plaintiffs have made the conclusory allegation that they have incurred out-of-pocket expenses, they cannot allege that additional monitoring costs were reasonable or necessary. *Id.* at 47. Plaintiffs have made the conclusory allegation that credit monitoring services provided by AMC were inadequate but have not alleged any facts demonstrating why the credit monitoring services were inadequate. *Id.* (finding Plaintiffs failed to state a claim alleging a cognizable tort injury and dismissing Plaintiffs' negligence claim for failure to demonstrate their out-of-pocket expenses were reasonable and necessary and not alleging why the monitoring services provided were inadequate).

*Anxiety and emotional distress.* Plaintiffs allege that they suffered "anxiety, stress, and frustration as a result of the Data Breach." Opp'n at 13, Dkt. #50. Actual damages can include emotional distress, but a plaintiff must support this claim with more than just conclusory allegations. *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026 (C.D. Cal. 2020). Plaintiffs' contentions do not rise above the conclusory. Including anxiety and emotional distress

"in a laundry list of categories of damages," is "insufficient to state a plausible entitlement to these damages." *Sion v. SunRun, Inc.*, No. 16-CV-05834, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017). Dismissal is appropriate because Plaintiffs' allegations concerning their purported anxiety and emotional distress are "too sparse and conclusory" to support their damages claims."[5]

        2.    <u>Plaintiffs' Negligence Claims are Barred by the Economic Loss Doctrine</u>.

Plaintiffs' negligence claims are barred by the economic loss doctrine because the only cognizable injury alleged is financial loss, which, if viable, can be redressed only by their implied contract theory. *Reighard v. Yates*, 2012 UT 45, ¶ 21. Plaintiffs argue that the economic loss doctrine does not bar their negligence claim because they have alleged "duties outside of contract." Opp'n at 15, Dkt. #50. Plaintiffs characterize this "independent duty" as "a general duty to protect Plaintiffs' PII." *Id.* Plaintiffs then claim that AMC had a duty under an implied contract "to safeguard their PII." *Id.* at 18-19. Plaintiffs rely upon the same duty for both their negligence and implied contract claims. Accordingly, the economic loss doctrine bars Plaintiffs' negligence claim because "once there is a contract, any tort claim must be premised upon an independent duty *that exists apart from the contract*" and "all contract duties, and all breaches of those duties . . . must be enforced pursuant to contract law." *Reighard*, 2012 UT 45, ¶ 21.

        3.    <u>AMC Did Not Owe a Duty to Protect Plaintiffs from Unforeseeable Hacks</u>.

While Plaintiffs claim to detail "standards" that AMC failed to follow, they do not identify how any of these standards would have prevented a third-party criminal from infiltrating its system. As in *In re Waste Mgt. Data Breach Litig.*, where the court held that a data breach plaintiff

---

[5] *Holly*, 612 F. Supp. 3d at 1026-27. The "emotional distress suffered must be severe; it must be such that a 'reasonable [person,] normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Harnicher v. Univ. of Utah Med. Ctr.*, 962 P.2d 67, 71-72 (Utah 1998) (quoting *Hansen v. Mtn. Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993)). Plaintiffs have not made such allegations.

must plausibly allege the breach *and* that the defendant caused the breach by failing to reasonably protect the subject data, Plaintiffs' allegations here fail to support the causation element of their negligence claims. No. 21CV6147 (DLC), 2022 WL 561734, at *5 (S.D.N.Y. Feb. 24, 2022).

      **B.**     **Plaintiffs Fail to State a Claim for Breach of Implied Contract.**

Plaintiffs fail to allege any material terms and conditions sufficient to sustain their claim. Plaintiffs' Opposition simply repeats the conclusory, barebones recitals of the Consolidated Complaint – namely that AMC, in receiving PII, allegedly became obligated to reasonably safeguard Plaintiffs' and other Class Member's PII. Compl. ¶ 247, Dkt. #41. This is not enough. Just stating that an implied contract existed is insufficient to sustain a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs make a last-ditch argument that, even though they have not alleged any terms, "the terms of an implied contract and whether or not one exists are fact-intensive questions for the trier of fact." Opp'n at 20, Dkt. #50. While this may be true, Plaintiffs still must plead basic facts necessary to put AMC on notice of what contract it allegedly breached. Because Plaintiffs' have not pled such basic facts, Count II must be dismissed with prejudice.

      **C.**     **Plaintiffs Fail to State a Claim for Unjust Enrichment in Count III.**

Plaintiffs do not allege how AMC supposedly benefited from receiving their private information. In data breach matters, a traditional exchange of payment for goods and services is not a circumstance in which it is "unjust" to allow the defendant to retain the benefit. *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *8 (S.D. Ohio Sept. 29, 2023). Plaintiffs acknowledge in their Consolidated Complaint that, "Academy required them to provide PII as a necessary component of **obtaining mortgage services** and/or as a condition of employment." Opp'n at 21, Dkt. #50 (Compl. ¶ 90) (emphasis added). Yet, without any rationale or support, Plaintiffs state that "this case is inapposite to *Tate* […] where the transaction was a

'traditional exchange of payment for goods and services.'" *Id.* The transaction here centered entirely around payment for a service – mortgage services. Like *Tate*, it is not "unjust" to allow AMC to retain its benefit when Plaintiffs paid for and received mortgage services. Plaintiffs do not allege the mortgage services they purchased did not provide Plaintiffs with fair value.[6] Lastly, in a data breach case, the plaintiff must allege that they "paid extra for a security package that they were promised and did not receive." *Webb*, LLC*, 2023 WL 5938606, at *4. Plaintiffs fail to address *Webb* and fail to allege that they paid extra for a security package that they were promised and did not receive. Thus, Count III should be dismissed with prejudice.

D. **Plaintiffs Fail to State a Claim for Invasion of Privacy.**

Plaintiffs fail to allege that AMC committed no intentional interference in Plaintiff's private affairs that was "highly offensive." *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997). At most, AMC purportedly did not adequately protect against cyberattacks. Courts in other data breach cases have found such activity is not highly offensive, even when it involves social security numbers.[7] Plaintiffs fail to allege any intentional act by AMC to intrude into Plaintiffs' private matters. *Stien*, 944 P.2d at 378 (citing examples of conduct that

---

[6] *See Van Zanen v. Qwest Wireless, LLC*, 522 F.3d 1127, 1130 (10th Cir. 2008) (affirming dismissal of unjust enrichment claim where plaintiffs paid sales commissions and received value for their money). Plaintiffs also do not allege they were inadequately compensated for their labor. *Kirk v. Rockwell Collins, Inc.*, 2015 WL 2156676, at *9 (D. Utah Feb. 4, 2015) ("An employee cannot state a claim for unjust enrichment where the employee was compensated for his services unless the employee presents facts showing that his compensation was unreasonable or that the employer was unjustly enriched when it compensated the employee.").

[7] *See, e.g.*, *Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718, 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018) (allegations that defendant implemented "low-budget security measures" with "disregard of [the] consequences" were inadequate to state invasion claim: "[l]osing personal data through insufficient security doesn't rise to the level of an egregious breach of social norms underlying the protection of sensitive data like Social Security numbers"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even negligent conduct that leads to theft of highly personal information, including social security numbers, does not 'approach [the] standard' of actionable conduct … and thus does not constitute a violation of Plaintiffs' right to privacy." (citation omitted)); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1141 (E.D. Cal. 2021) (citing *In re iPhone*, 844 F. Supp. 2d 1040).

supported a finding of an intrusion to include eavesdropping upon private conversations by means of wiretapping and microphones, peering into the windows of a home, and unwanted phone calls). That Plaintiffs acknowledge their PII was taken by an unauthorized third party (Compl. ¶ 3) is inconsistent with the requisite conduct needed to find intentionality as to AMC. Plaintiffs fail to provide any support that the threat actor, or any other individual, has *actually viewed their* personal information. *Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 100 (D. Mass. 2023). No factfinder could say Plaintiffs suffered any intrusion into *their* personal information.

### E. Failure to State a Claim: Washington Consumer Protection Act ("WCPA").

The Court should dismiss Plaintiffs' claim for violation of the WCPA because Plaintiffs lack standing and fail to allege damages caused by AMC's alleged conduct and omissions. AMC never engaged in business with any Plaintiffs to provide cybersecurity as a service. Rather, AMC provided mortgage services. Plaintiffs' conclusory statement that "the promise to safeguard PII is inherent to any transaction in which one is required to entrust confidential information to another" shows yet another leap of logic. Count V should be dismissed.

### F. Failure to State a Claim: Idaho Consumer Protection Act ("ICPA").

Plaintiffs fail to allege an unfair act and actual damages caused by AMC. Plaintiffs fail to allege how AMC's alleged failure to implement reasonable data security is an "unfair practice" within the meaning of the ICPA. Plaintiffs further fail to show how AMC's alleged failure to disclose its allegedly inadequate security is a "deceptive act" within the meaning of the ICPA. *See id.* Therefore, Count VI should be dismissed.

## CONCLUSION

For the reasons set forth above, AMC respectfully requests that this Court grant its Motion to Dismiss the Plaintiffs' Consolidated Complaint in its entirety.

DATED this 31st day of October 2024.

        RAY QUINNEY & NEBEKER P.C.

        /s/ Kamie F. Brown
        Kamie F. Brown
        Kristina M. DuBois

        Justin J. Boron (*pro hac vice*)
        Kevin M. Ringel (*pro hac vice forthcoming*)
        **FREEMAN MATHIS & GARY, LLP**

        *Attorneys for Academy Mortgage Corporation*