KAMIE F. BROWN (8520)
KRISTINA M. DUBOIS (18908)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel: (801) 532-1500
kbrown@rqn.com
kdubois@rqn.com

JUSTIN J. BORON (*pro hac vice*)
KEVIN M. RINGEL (*pro hac vice* forthcoming)
**FREEMAN MATHIS & GARY, LLP**
1600 Market Street
Philadelphia, PA 19103-7240
Tel: (215) 789-4919
justin.boron@fmglaw.com
kevin.ringel@fmglaw.com

*Attorneys for Academy Mortgage Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAZARO STERN, CELESTE ALLEN, LISA KUCHERRY, PETER SMITH, and SHARON THOMPSON, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | **MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Case No. 2:24-cv-00015-DBB-DAO<br><br>Judge David Barlow |

Defendant Academy Mortgage Corporation ("Academy Mortgage") moves to dismiss the Amended Consolidated Class Action Complaint ("Amended Consolidated Complaint") filed by Lazaro Stern, Celeste Allen, Lisa Kucherry, Peter Smith, and Sharon Thompson (collectively, "Plaintiffs").

## SPECIFIC RELIEF SOUGHT AND GROUNDS FOR RELIEF

Academy Mortgage, a private mortgage company based in Utah, was the victim of a cyberattack committed by foreign criminals. Plaintiffs were customers of Academy Mortgage and an employee. Fortunately, because Academy Mortgage secured its systems, no one was actually harmed. Academy Mortgage has received zero reports of any customers or employees suffering a loss from actual identity theft. That "would ordinarily be cause for celebration, not a lawsuit." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021). There should not be a lawsuit here—and certainly not a repeat lawsuit. This Court has already held that Plaintiffs did not allege legally sufficient harm and dismissed this action without prejudice. (Memorandum Decision & Order Granting Motion to Dismiss ("Mem. Decision"), ECF No. 62.) The Court should again dismiss Plaintiffs' Amended Consolidated Complaint for four reasons.

*First*, the Amended Consolidated Complaint is procedurally improper. When the Court dismissed the action without prejudice, it was a final order that "terminated" the action; the Court "no longer preside[d]" over it. *See Waetzig v. Halliburton Energy Servs., Inc.,* 145 S. Ct. 690, 697 (2025). Moreover, Plaintiffs did not obtain leave or consent under Rule 15(a)(1) of the Federal Rules of Civil Procedure before they filed the Amended Consolidated Complaint. Therefore, the Amended Consolidated Complaint should be struck and the case administratively closed.

*Second*, the Court's Memorandum Decision & Order Granting Motion to Dismiss (ECF No. 62) was a final judgment that imposed the doctrines of issue preclusion and law of the case. Both bar Plaintiffs from re-litigating identical, Article III standing issues conclusively decided in the previous judgment.

*Third*, Plaintiffs' claims remain speculative and do not establish a concrete injury traceable to Academy Mortgage. Thus, Plaintiffs lack standing under Article III.

*Fourth*, even assuming, *arguendo*, that the Court finds Plaintiffs have met their procedural and jurisdictional prerequisites, Plaintiffs' Amended Consolidated Complaint fails to state a plausible claim for relief. Plaintiffs have not sufficiently alleged damages under Utah law and have failed to allege sufficient facts to support other material elements of their claims.

For all of these reasons, Plaintiffs' Amended Consolidated Complaint should be dismissed (again).

## **PROCEDURAL POSTURE**

The procedural posture of Plaintiffs' Amended Consolidated Complaint is critical. On January 17, 2025, the Court dismissed Plaintiffs' Consolidated Class Action Complaint "without prejudice." (Mem. Decision, ECF No. 62, at 14.) On February 12, 2025, and before the action was administratively closed, Plaintiffs filed a Stipulated Motion to Set Schedule for Filing Amended Complaint and Briefing Deadlines. (ECF No. 63.) Academy Mortgage did not consent to Plaintiffs' filing the Amended Consolidated Complaint. When Plaintiffs presented the proposed motion to Academy Mortgage, it had not provided a redline version of the proposed amended complaint under Rule 15-1 of the local rules. Academy Mortgage did not have the opportunity to review the proposed pleading and object. In fact, during a good faith conferral, Plaintiffs' counsel took the position that Plaintiffs did not need leave from the Court to amend their pleading (and Academy disagreed).

On February 13, 2025, the Court granted the Stipulated Motion to Set Schedule for Filing Amended Complaint and Briefing Deadlines. (*See* ECF No. 64.) Neither the Motion nor the

Court's Order grants Plaintiffs leave to file the amendment, nor do they waive or modify the local rules or other procedural requirements concerning the filing of any amendment. Plaintiffs nevertheless filed their First Amended Complaint on February 21, 2025 (ECF No. 65), without receiving leave as required by Rule 15 and before the case was administratively closed.

## **RELEVANT FACTS**

Academy Mortgage was a privately held Utah-based mortgage lender serving customers across over 200 branches nationwide.[1] (Amended Consol. Compl., ECF No. 65, ¶ 1.) In March 2023, Academy Mortgage was the victim of a criminal hack of its digital files. (*Id.* ¶ 3.) When it discovered unauthorized activity in its system, Academy Mortgage immediately began containment, mitigation, and restoration efforts to terminate the activity and secure its network systems and data. (*Id.* ¶ 3.) Academy Mortgage notified about 284,000 customers and employees whose personally identifiable information ("PII") might have been accessible to the hacker. (*Id.* ¶ 1.) Academy Mortgage also offered them free credit monitoring. (*Id.* ¶ 198.)

**1.     Plaintiffs' Relationship with Academy Mortgage.** Plaintiffs Stern, Allen, Kucherry, and Smith are former Academy Mortgage customers who received letters informing them of the data security incident and offering credit monitoring. (*Id.* ¶¶ 22–71.) Plaintiffs Stern, Allen, Kucherry, and Smith allege that as a condition of receiving mortgage services from Academy Mortgage, they provided it with their PII, including but not limited to, their names and Social Security numbers. (*Id.*) Plaintiff Thompson is a former employee of Academy Mortgage who received a letter informing her of the data security incident and offering credit monitoring.

---

[1] Academy Mortgage's assets (but not liabilities) were acquired by Guild Mortgage on or about February 13, 2024.

(*Id.* ¶¶ 72–84.) Plaintiff Thompson alleges that she provided her PII to Academy Mortgage in connection with her employment. (*Id.* ¶ 73.)

    **2.    Plaintiffs' Alleged Injuries.** Plaintiffs assert that "ALPHV BlackCat" ("BlackCat"), an alleged cybercriminal group, exfiltrated PII from Academy Mortgage during the Data Incident and published it to the "Dark Web." (*Id.* ¶ 107.) They allege that they are "exposed to a present and imminent risk of fraud and identity theft" because "the PII that Defendant collected and maintained is now in the hands of data thieves and has been released on the dark web." (*Id.* ¶¶ 13, 15, 17.)

    **(a)    Loss of Privacy, Diminution of Value and Mitigation Costs.** Plaintiffs also contend that they have suffered "a loss of privacy" (*id.* ¶ 192(f)), an injury in the form of "damage to and diminution in the value of their PII" (*id.* ¶ 204(a)), and that they will suffer "[a]scertainable losses in the form of out-of-pocket expenses and the value of their time" remedying or mitigating the effects of the Incident. (*Id.* ¶ 192(g).) They allege they will have to review and monitor their accounts, SSNs, and credit reports; place freezes on accounts; spend time on the phone; and contact financial institutions (*Id.* ¶¶ 203(a)–(f)) (collectively, "Mitigation Against Future Harm").

    **(b)    Emotional Distress.** Plaintiffs also allege that they are "forced to live with the anxiety that their PII may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy . . . ." (*Id.* ¶ 210) (collectively, "Emotional Distress").

    **(c)    Fraudulent Activity.** Plaintiff Smith is the sole Plaintiff to allege identity theft, *i.e.*, that his PII was used to obtain a loan in his name immediately following the data breach. (*Id.* ¶ 66.) He doesn't allege that he incurred monetary losses as a result of the loan attempt.

**ARGUMENT**

In considering a Rule 12(b)(6) motion, the court must accept the factual allegations as true, but not legal conclusions or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The same is true for a Rule 12(b)(1) motion, unless the parties ask the Court to "go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends." *Swepi, LP v. Mora County*, 81 F. Supp. 3d 1075, 1122 (D. N.M. 2015); *see also Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). That is not the case here. As a result, factual allegations must be enough to raise a right to relief or jurisdiction above the speculative level. *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

**I.    PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT SHOULD BE STRUCK AS IMPROPER.**

The Court's order entering dismissal without prejudice was a final judgment. *See Waetzig v. Halliburton Energy Servs., Inc.,* 145 S. Ct. 690, 697 (2025). Once the final judgment was entered, the action was "terminated" and the Court "no longer preside[d]" over it. *Id.* at 697. Plaintiffs' Amended Consolidated Complaint is ineffective. Even construing it generously as a request for rehearing, a final judgment prohibits a "rehearing" on any previous orders. *Id.* Plaintiffs' filing is a nullity in an already terminated action.

Additionally, under Rule 15(a)(1), a plaintiff may amend its pleading once as a matter of course under certain conditions. Additional amendments are permitted only upon the "opposing party's written consent or the court's leave." *See* Fed R. Civ. P. 15(a)(2). "[U]nder Rule 15-1 of the Rules of Practice for the United States District Court for the District of Utah, a party seeking

leave to amend a pleading must file a motion, which contains both 'the proposed amended pleading, and . . . a redlined version of the proposed amended pleading comparing it with the pleading sought to be amended' as exhibits.'" *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1220 (D. Utah 2023) (internal citations and quotations omitted).

Plaintiffs did not fulfill these procedural prerequisites for filing an amended complaint. (ECF No. 65.) At best, Plaintiffs misunderstood the procedural posture of the action when they filed their Amended Consolidated Complaint. At worst, Plaintiffs improperly seek to avoid the preclusive effect of the Court's previous ruling. Regardless, Plaintiffs did not follow the rules and deprived Academy Mortgage of the right to review and object to their Amended Consolidated Complaint. Therefore, the Court should strike Plaintiffs' Amended Consolidated Complaint.

## II.    THE DOCTRINES OF ISSUE PRECLUSION AND LAW OF THE CASE BAR PLAINTIFFS FROM RE-LITIGATING ARTICLE III STANDING.

"[A] litigant given one good bite at the apple should not have a second." *United States v. Alvarez,* 142 F.3d 1243, 1247 (10th Cir. 1998) (quoting *Perk-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984)). This idiom covers the federal courts' doctrines of claim preclusion, issue preclusion, and law of the case, which have overlapping application and guard against "repeat litigation." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1135 (10th Cir. 2004). Claim preclusion wouldn't apply here. But issue preclusion makes the rulings on issues in previous litigation "conclusive." *Id.* at 1136. And the law of the case doctrine applies to decisions made within the same action and holds that "once an issue has been resolved in a judicial proceeding, it ordinarily should not be reexamined by the court." *Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1278 (10th Cir. 2024).

Plaintiffs' Amended Consolidated Complaint exists in a procedural no-man's land—somewhere on the border between a subsequent action in response to a dismissal without prejudice and a request for reconsideration in the original action in which the Court dismissed the case without prejudice. Given the awkward procedural posture, Plaintiffs' Amended Consolidated Complaint straddles the doctrines of issue preclusion and law of the case. Regardless, under either rule, the Court should reject Plaintiffs' attempt to relitigate the Court's dismissal of this action based on lack of Article III standing.

### A. Plaintiffs' Amended Consolidated Complaint Is Barred by Issue Preclusion.

In general, issue preclusion applies in a subsequent action when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Park Lake*, 378 F.3d at 1136 (quoting *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000)). Elements (1), (3), and (4) are plainly fulfilled. Plaintiffs are raising the same Article III injury-in-fact and causation issues ruled on in the Court's January 17, 2025 Order. (*See generally* Mem. Decision, ECF No. 62.) They are the same parties raising it. And one would hope that they wouldn't argue that the Court's process was incomplete or unfair. The only issues requiring discussion are whether their Amended Consolidated Complaint should be construed as a "subsequent action" and whether there has been an adjudication "on the merits." Both are true, and Plaintiffs' claims are therefore barred by issue preclusion.

1.    *Plaintiffs' Amended Consolidated Complaint amounts to a "subsequent action."*

Because the Court found that Plaintiffs lacked Article III standing, it correctly entered judgment dismissing Plaintiffs' action without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006). The Court's judgment was "final," which meant that the action was "finally terminated," the Court no longer presided over it, and "a party [could] no longer seek a 'rehearing' on an interlocutory judgment." *Waetzig,* 145 S. Ct. at 697.

Earlier this year, the U.S. Supreme Court eliminated any doubt that a dismissal without prejudice is "final." *Id.* at 696. A voluntary dismissal without prejudice "falls comfortably" within the definition of "final." *Id.* "The dismissal is the 'conclusive' and 'last' filing on the docket, and it 'complete[s]' the particular lawsuit at issue." *Id.* (quoting BLACK'S LAW DICTIONARY 779 (3d ed. 1933)). "And, like a 'final order,' the dismissal 'terminates the action itself.'" *Id.* (quoting BLACK'S LAW DICTIONARY 1298). If a voluntary dismissal without prejudice is final, an involuntary dismissal without prejudice is certainly final too. *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 818 (10th Cir. 2021).

By filing an amended pleading, Plaintiffs unilaterally tried to re-open an action after the case was terminated. "After a case is finally terminated, however, a court no longer presides, and a party can no longer seek a 'rehearing' on an interlocutory judgment." *Waetzig*, 145 S. Ct. at 697. Relying on this principle, the Supreme Court rejected a plaintiff's "procedurally creative" move to return to the "old docket" number and file a motion there rather than "filing a new lawsuit in federal court." *Id*. at 694. The same anomaly is present here. Accordingly, because the Court entered a final judgment, it no longer presides over this action and cannot consider Plaintiffs' Amended Consolidated Complaint. *See supra*.

Once the action was terminated, Plaintiffs' sole alternative to maintain the current action was in Rule 60(b). The procedure allows a court to "relieve a party . . . from a final judgment." Fed. R. Civ. P. 60(b). This option is "discretionary, not 'a matter of statutory right.'" *Waetzig*, 145 S. Ct. at 698 (quoting *Arizona v. Manypenny*, 451 U.S. 232, 245 n.19 (1981)). Plaintiffs have not filed a motion under Rule 60(b). As a result, the Court's January 17, 2025 order was a final judgment, and the case was and continues to be terminated. Plaintiffs' Amended Consolidated Complaint is at best a nullity and, at worst, a subsequent action for purposes of issue preclusion. The Court should either strike Plaintiffs' Amended Consolidated Complaint and order the action administratively closed, or dismiss it as barred by issue preclusion.

2.     *The Court's judgment dismissing the action without prejudice has preclusive effect even though it might not be a judgment "on the merits."*

There is no doubt that the Court's dismissal was for lack of jurisdiction and that it was, of course, not "on the merits" as far as that term applies to dismissals with prejudice. *See Park Lake*, 378 F.3d at 1136. Plaintiffs would be "mistaken, however, in asserting that a jurisdictional dismissal can have *no* issue-preclusive effect." *Id*. "It has long been acknowledged that '[t]he principles of *res judicata* apply to questions of jurisdiction as well as to other issues.'" *Id*. (quoting *Am. Sur. Co. v. Baldwin,* 287 U.S. 156, 166 (1932)). "In particular, dismissals for lack of jurisdiction preclude relitigation of the issues determined in ruling on the jurisdiction question." *Id*. (cleaned up); *see also* 18 FED. PRAC. & PROC. JURIS. § 4418 (3d ed. 2024) ("The same question of jurisdiction . . . cannot be reopened in a second action . . . ."). Accordingly, as in *Park Lake*, the Court's January 17, 2025 memorandum and order has issue-preclusive consequences with respect to the issue decided, including Article III standing.

In dismissing Plaintiffs' Amended Complaint, this Court found that "Plaintiffs have failed to allege that they have been actually harmed by the Data Breach in a way that is fairly traceable to Academy." (Mem. Decision, ECF No. 62 at p. 14.) The Court also found that Plaintiffs failed to demonstrate "standing to pursue damages or injunctive relief." (*Id.*) Under *Park Lake*, these findings are conclusive and may not be relitigated in a subsequent action. *See* 378 F.3d at 1138.

Plaintiffs also would be mistaken if they invoked the "curable-defect exception" to "jurisdictional issue preclusion." *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.,* 702 F. App'x 708, 711 (10th Cir. 2017). The Tenth Circuit has recurrently taken the position that "the change in circumstances" curing the jurisdictional defect "must occur *subsequent to the prior litigation*." *Id.* (quoting *Park Lake*, 378 F.3d at 1136). Plaintiffs added more than a dozen lines related to their information being published on the Dark Web. (*See* Amend. Consol. Compl., ECF No. 65, ¶¶ 4, 6, 7, 13, 15, 17, 29, 30-32, 41-44, 53-56, 65-70, 79-82.) None of them apparently involved activity that arose after the Court's ruling on January 17, 2025. Curable-defect does not provide Plaintiffs' an escape-valve from issue preclusion here. The Court should dismiss Plaintiffs' Amended Consolidated Complaint.

## B.    Plaintiffs' Amended Consolidated Complaint Is Barred by Law of the Case.

Law of the case is defined by its result: "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The resolution of the issue need not be explicit. *Harris*, 112 F.4th at 1278–79. The "principle applies to all issues previously decided, either explicitly or by necessary implication." *Id*. at 1278 (quoting *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1288 (10th Cir. 2024)).

Here, the Court ruled that Plaintiffs' harm allegations were insufficient. (Mem. Decision, ECF No. 62, at p. 14). Of course, if this Court were to construe the Amended Consolidated Complaint as part of the same action rather than a subsequent one, it could reconsider. "All federal courts retain power to reconsider if they wish." *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) (cleaned up). Rule 54(b) makes that principle uncontroversial.

But there is no good reason why this Court should do so. Plaintiffs could have alleged, and argued, all of the facts that they urge in their Amended Consolidated Complaint. Without some limit on the chances to add new allegations, Plaintiffs could ensnare Academy Mortgage (a company that is no longer doing business), and the Court, in a perpetual cycle of dismissals and amended complaints, forcing Academy Mortgage to re-litigate, and the Court to re-decide, the same issues over and over. That could not be what the Court envisioned when it dismissed Plaintiffs' action without prejudice. (ECF No. 62.) Thus, the Court should dismiss the case again under the law of the case doctrine.

## III. THE COURT SHOULD DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF STANDING.

The Amended Consolidated Complaint fails to correct the jurisdictional defects the Court previously identified. "Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021). Under this rule, each named plaintiff must show (1) they have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Utah Physicians for a Healthy Env't, Inc. v. TAP Worldwide, LLC,* 582 F. Supp. 3d 881, 891 (D. Utah Jan. 25, 2022).

### A.    Plaintiffs Fail to Allege a Connection Sufficient to Support Traceability.

To meet the traceability prong under Article III, "plaintiffs must establish a causal connection between the injury and the conduct complained of." *Stern v. Acad. Mortg. Corp.*, No. 2:24-CV-00015-DBB-DAO, 2025 WL 239036, at *4 (D. Utah Jan. 17, 2025) (cleaned up); *see also Alfwear, Inc. v. IBKUL Corp.,* 672 F. Supp. 3d 1174, 1184 (D. Utah 2023) (stating this principle similarly). "As part of this showing, a plaintiff must establish that its injury was not the result of the independent action of some third party not before this court." *Stern*, 2025 WL 239036, at *4. Traceability cannot be based on "a speculative chain of possibilities." *Id.*

As in the Court's January 17, 2025 opinion, Plaintiff Smith's fraudulent loan claim is not a traceable injury because "the identity theft occurred weeks before BlackCat allegedly took credit for the attack and issued a ransom demand to Academy." *Id.* Plaintiff Smith has not changed his allegation about the timing of the identity theft. (*Compare* First Amended Compl., ECF No. 41, ¶ 65, *with* Amended Consol. Compl., ECF No. 65, ¶ 66.) Instead, Plaintiff Smith—as well as the other Plaintiffs—allege that their PII was published on the Dark Web. Specifically, they allege that BlackCat posted 9,300 credentials of current and former employees, including "full names, email addresses (which use the email domain "@academymortgage.com"), employee titles, phone numbers, social media ID numbers (including Facebook, Twitter, LinkedIn, and Instagram), usernames, user ID numbers, passwords, hashed passwords, and IP addresses." (Amended Consol. Compl., ECF No. 65, ¶ 105). Plaintiff Thomas is the only named plaintiff that is a current or former employee. Plaintiffs Allen, Kucherry, and Smith don't make a similar allegation as the one in Paragraph 105, *i.e.,* one that specifies what information was posted on the Dark Web—just that their information was potentially posted on the Dark Web.

Plaintiffs likely added these allegations to address the Court's finding that Plaintiff Smith did "not allege that the PII he provided to Academy was posted to the dark web or otherwise made available to third parties between the Data Breach and the date the fraudulent loan was made." *Stern*, 2025 WL 239036, at *4. Of course, it begs the question about why they did not allege this information on the first go around. And Plaintiffs do not allege that *their* information was published. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975) ("Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."). But regardless, the stolen credentials do not address the mismatch between any alleged identity theft and the kind of credentials stolen. Put simply, Plaintiffs haven't explained how a criminal could take out a fraudulent loan using names, e-mail addresses, and social media details.

Courts have generally rejected standing arguments based on identity theft that is incongruent with the information allegedly compromised. *See, e.g.*, *In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. 18-ML-2826, 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) ("[T]he Court cannot discern, and Plaintiff does not sufficiently explain, how the hackers could use one's contact information and driver's license number to gain access to additional personal information [necessary to cause their alleged injuries]."); *Blood v. Labette Cnty. Med. Ctr.,* No. 5:22-CV-4036-HLT-KGG, 2022 WL 11745549, at *5 (D. Kan. Oct. 20, 2022) (plaintiffs lacked standing based on unauthorized charges to bank account where there was no allegation that plaintiffs' bank account number or debit card number was accessed in breach). The Court should do the same here and dismiss this action for lack of standing.

**B.     Plaintiffs Fail to Allege Any Other Misuse that Would Confer Standing.**

As this Court succinctly put, there are six potential grounds for standing in the Consolidated Class Action Complaint. (ECF No. 62 at p. 5). The same grounds for standing remain in the Amended Consolidated Complaint: (1) diminution in PII value; (2) mitigation efforts; (3) emotional distress; (4) increased risk of fraud, theft, or misuse of PII; (5) an increase in spam calls; and (6) Plaintiff Smith's claim of a loan taken out in his name. The Court previously rejected each of these grounds. *Stern,* 2025 WL 239036, at \*5–7. Plaintiffs have not changed their allegations on these points except to allege that information was published on the Dark Web. Putting aside these allegations—which fail to meet traceability requirements as discussed above—there is no other basis for Plaintiffs to have suffered an injury that is any more imminent than it was in the Court's previous decision. The Court should again dismiss Plaintiff's Amended Consolidated Complaint for lack of standing.

**IV.     PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM TO RELIEF.**

Putting aside Plaintiffs' standing problems, their claims also fail to state a claim to relief for the following reasons:

**A.     The Court Should Dismiss Plaintiffs' Negligence Claims in Count I.**

Plaintiffs have failed to allege a plausible claim to relief in Count I because: (1) Utah law does not recognize a cause of action for future risk of harm, and (2) their negligence claims are barred by the economic loss rule.

       *1.     Utah law does not recognize a cause of action for Plaintiffs' claims to recover current damages based on the increased risk of future harm.*

It is hornbook law that negligence requires existing harm. "The harm requirement is one of the most fundamental tenets of negligence law: the tort is incomplete and there can be no legal

redress without proof of actual damage." Yehuda Adar & Ronen Perry, *Negligence Without Harm*, 111 Geo. L.J. 187, 188 n.1 (2022) (citing the leading and contemporary authorities on tort law to affirm that "the harm requirement is a general characteristic of tort law"). "Mere exposure to risk, even when it is foreseeable and unreasonable, is not actionable." *Id.* Because "[m]aterialization of the risk" is "central to an action in negligence," "courts are staunchly reluctant to grant relief when plaintiffs bring such actions for the mere creation or enhancement of risk." *Id.* at 192. Holding otherwise has been considered "unthinkable." *Id.* at 189. Yet that is what Plaintiffs ask the Court to do.

In the last 50 years, there has been one exception to the hardened requirement that there be present harm in a minority of jurisdictions: medical monitoring in toxic tort cases. Utah is one of those jurisdictions. *See Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993). Only after a careful public policy discussion, the *Hansen* Court permitted an independent cause of action for medical monitoring, but only when a plaintiff can prove exposure to a "toxic substance" caused by the defendant's negligence that produced an increased risk of illness for which a medical test allowing early detection exists. *Id.*

This very narrow exception does not extend to data breach cases or the types of injuries Plaintiffs allege here. A careful reading of Plaintiffs' tort claims reveals that their Mitigation Against Future Harm damages are based on a future injury that hasn't occurred.[2] Although Plaintiffs have disguised their novel tort claims under traditional tort principles, they are nothing close to traditional common law claims. Under Utah law, Plaintiffs' alleged cause of action does not exist. Plaintiffs' claims would require this Court to rule that the Utah Supreme Court would

---

[2] *Supra* at III.

create a new cause of action like it did for medical monitoring. Based on the facts Plaintiffs allege, that would be too big of an *Erie* guess to make. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The Court should dismiss Count I on this ground.

2.    *Plaintiffs' negligence claims are barred by the economic loss rule.*

Despite the prima facie problems on damages, Plaintiffs' claims for mitigation damages nevertheless fail based on the economic loss rule. *See Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶ 28, 230 P.3d 1000. The economic loss rule prevents a plaintiff's recovery in tort for damages of a purely economic nature. *See id.* Economic losses include "[d]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits . . . as well as the diminution in the value of the product." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669 (cleaned up). As a result, Plaintiffs' negligence claim is barred to the extent they seek economic losses. *See Sunridge Dev. Corp.*, 2010 UT 6, ¶ 28. Accordingly, the Court should dismiss Count I as barred by the economic loss rule.

**B.    The Court Should Dismiss Plaintiffs' Breach of Implied Contract Claim in Count II.**

Plaintiffs ask to enforce an implied contract. A contract implied in fact is a "contract" established by conduct. *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987). The elements of a contract implied in fact are (1) the defendant asked the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate them for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation. *Id.* at 269.

Plaintiffs allege that an implied contract was formed on the mere act of providing their PII to Academy Mortgage, which, in receiving the PII, allegedly became obligated to safeguard Plaintiffs' PII. (Amended Consol. Compl., ECF No. 65, ¶ 255.) This barebones recital doesn't

meet the three required elements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And without an allegation of material terms about safeguarding an employee's PII, there can be no breach-of-implied contract in a data breach case. *See Longenecker-Wells v. Benecard Servs. Inc.,* 658 F. App'x 659, 662 (3d Cir. 2016) ("Plaintiffs have failed to plead any facts supporting their contention that an implied contract arose between the parties other than that [Defendant] required Plaintiffs' personal information as a prerequisite to employment."); *see also In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.,* No. 19-md-2904, 2021 WL 5937742, *19 (D.N.J. Dec. 16, 2021) ("[C]ourts have consistently held that the fact that a defendant required plaintiffs to provide personal information does not alone support the inference that the parties agreed for the defendant to secure this information."); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *8 (S.D. Ohio Sept. 29, 2023) (finding the plaintiffs' threadbare allegation that they and the defendant entered into an implied contract whereby the defendant would safeguard and protect the plaintiffs' PII insufficient for purposes of avoiding a motion to dismiss their breach of implied contract cause of action); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (explaining that "the vast majority of commercial transactions today require the disclosure of PII"; and that where PII was provided as a condition of enrollment, employment or service is "insufficient to support an implied contract claim."). The Court should dismiss Plaintiffs' Count II with prejudice.

C.    **The Court Should Dismiss Plaintiffs' Unjust Enrichment Claims in Count III Because Plaintiffs Do Not Allege How Academy Mortgage Benefited from Receiving Plaintiffs' Private Information.**

There are three elements to an unjust enrichment claim: (1) "benefit conferred"; (2) knowledge by the recipient of the benefit; and (3) "acceptance or retention by the conferee of the

benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2006) (cleaned up). While some courts have recognized that victims of a data breach may be able to state a claim for unjust enrichment "in situations where businesses commoditize or receive an independent pecuniary benefit from holding the Personal Information," that is not the case here. *See, e.g.*, *Am. Med.*, 2021 WL 5937742, *18.

The Amended Consolidated Complaint simply provides a conclusory statement that Academy Mortgage "benefitted from the receipt of Plaintiff's and the Class's PII" for "business purposes" while Plaintiff and the class should have had their PII protected with adequate data security. (ECF No. 65, ¶ 271.) But this is not sufficient to show that Academy Mortgage was in any way enriched at Plaintiffs' expense. Specifically, Plaintiffs do not allege that Academy Mortgage received any independent pecuniary benefit from retaining Plaintiffs' PII.

Courts in data breach matters nationwide have held that a traditional exchange of payment for goods and services is not a circumstance in which it is "unjust" to allow the defendant to retain the benefit. *See, e.g.*, *Tate*, 2023 WL 6383467, at *8. Further, in a data breach case, the plaintiff must allege that they "paid extra for a security package that they were promised and did not receive." *Webb v. Injured Workers Pharmacy, LLC*, No. 22-cv-10797, 2023 WL 5938606, at *4. Here, Plaintiffs got what they paid for—mortgage services. *Cf. Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) ("Plaintiffs paid for burritos; Plaintiffs received burritos."). Because Academy Mortgage was not unjustly enriched by Plaintiffs' payments for mortgage services, this claim is implausible on its face. The same goes for employees. Count III should be dismissed with prejudice.

**D.    The Court Should Dismiss Plaintiffs' Invasion of Privacy Claims in Count IV Because Plaintiffs Have Not Alleged Intentional Interference.**

To establish an invasion of privacy claim, a plaintiff must show (1) "an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party" that (2) "would be highly offensive to the reasonable person." *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (cleaned up). For example, wiretap eavesdropping, peaking into windows, persistent and unwanted phone calls give rise to a claim. *Id.* Plaintiffs don't allege an intrusion by Academy Mortgage—certainly not an intentional one like the examples above. The Court should dismiss Count IV.

**E.    The Court Should Dismiss Plaintiffs' Claim for Violation of the Washington Consumer Protection Act ("WCPA") in Count V Because Plaintiffs Lack Statutory Standing.**

There are five elements of a WCPA but only one relevant to this motion: "damage to business or property." *Keodalah v. Allstate Ins. Co.,* 449 P.3d 1040, 1047 (Wash. 2019). Plaintiffs' allegations fail to establish that they sustained an injury to property. Plaintiffs have therefore failed to properly allege all of the elements necessary to sustain a claim under WCPA. Accordingly, Count V should be dismissed.

**F.    The Court Should Dismiss Plaintiffs' Claims for Violation of the Idaho Consumer Protection Act ("ICPA") in Count VI Because Plaintiffs Do Not Allege an Unfair Act.**

Of the three elements of an ICPA claim, one is relevant here: an ascertainable loss of money or property (real or personal). *See Pickering v. Sanchez*, 544 P.3d 135, 142 (Idaho 2024). As noted above, the alleged diminution of value in PII is no such loss to property, and Plaintiff Kucherry and the Idaho subclass do not allege any ascertainable monetary harm. Count VI should be dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above, Academy Mortgage respectfully requests that this Court grant its Motion to Dismiss the Plaintiffs' Amended Complaint in its entirety.

DATED this 28th day of March 2025.

RAY QUINNEY & NEBEKER P.C.


  */s/ Kamie F. Brown*
Kamie F. Brown
Kristina M. DuBois

Justin J. Boron (*pro hac vice*)
Kevin M. Ringel (*pro hac vice forthcoming*)
**FREEMAN MATHIS & GARY, LLP**

*Attorneys for Academy Mortgage Corporation*