KAMIE F. BROWN (8520)
KRISTINA M. DUBOIS (18908)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel: (801) 532-1500
Fax: (801) 532-7543
kbrown@rqn.com
kdubois@rqn.com

JUSTIN J. BORON (*pro hac vice*)
**FREEMAN MATHIS & GARY, LLP**
1600 Market Street
Philadelphia, PA 19103-7240
Tel: (215) 789-4919
justin.boron@fmglaw.com
*Attorneys for Academy Mortgage Corporation*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| LAZARO STERN, CELESTE ALLEN, LISA KUCHERRY, PETER SMITH, SHARON THOMPSON, and CHARLY BATES, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | **MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Case No. 2:24-cv-00015-DBB-DAO<br><br>Judge David Barlow |

Defendant, Academy Mortgage Corporation ("Academy Mortgage"), moves to dismiss the Second Amended Consolidated Class Action Complaint ("Consolidated Complaint") filed by

Plaintiffs, Lazaro Stern, Celeste Allen, Lisa Kucherry, Peter Smith, Sharon Thompson, and Charly Bates (collectively "Plaintiffs").

## SPECIFIC RELIEF SOUGHT AND GROUNDS FOR RELIEF

Academy Mortgage, who used to be a mortgage company based in Utah, was the victim of a cyberattack committed by foreign criminals. Fortunately, Academy Mortgage has received *zero* reports of any customers or employees suffering a monetary loss from actual identity theft. That "would ordinarily be cause for celebration, not a lawsuit." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 437 (2021).

This Court should dismiss Plaintiffs' Consolidated Complaint for two reasons: (1) Plaintiffs lack Article III standing because their claims are speculative and do not establish a concrete injury traceable to Academy Mortgage; and (2) Plaintiffs' Consolidated Complaint fails to state a plausible claim for relief because they have not sufficiently alleged damages under Utah law and have failed to allege sufficient facts to support other material elements of their claims. Plaintiffs' Consolidated Complaint should accordingly be dismissed.

## MATERIAL FACTS

Academy Mortgage was a privately held Utah-based mortgage lender serving customers. (ECF No. 74, ¶ 2). Academy Mortgage's assets (but not its liabilities) were acquired by Guild Mortgage on or about February 13, 2024. In March 2023, Academy Mortgage was the victim of a criminal hack of its digital files. (*Id.* ¶ 3). When it discovered unauthorized activity in its system, Academy Mortgage immediately began containment, mitigation, and restoration efforts to terminate the activity and secure its network systems and data. (*Id.* ¶ 3). Academy Mortgage notified about 284,000 customers and employees whose personally identifiable information

("PII") might have been accessible to the hacker. (*Id.* ¶ 1). Academy Mortgage also offered them free credit monitoring. (*Id.* ¶ 219).

1. **Plaintiffs' Relationship with Academy Mortgage.** Plaintiffs Stern, Allen, Kucherry, and Smith are former Academy Mortgage customers who received letters informing them of the data security incident and offering credit monitoring services (*Id.* ¶¶ 23-24; 38-39; 52-53; 64-65). Plaintiffs Stern, Allen, Kucherry, Smith, and Bates allege that they provided their PII to Academy Mortgage as a condition of receiving Academy Mortgage's services. (*Id.* ¶¶ 24; 38; 52; 64; 94). Plaintiffs Thompson and Bates are former Academy Mortgage employees who received a letter informing them of the data security incident and offering credit monitoring services. (*Id.* ¶¶ 79; 81; 95). Plaintiffs Thompson and Bates allege that they provided their PII to Academy Mortgage in connection with her employment. (*Id.* ¶ 79).

Plaintiffs allege that Plaintiff Bates was a customer; he was an employee. Academy Mortgage has no record of him being a customer or potential customer.

2. **Employee Notifications.** Plaintiffs allege that, "on information and belief, ALPHV BlackCat committed the Data Breach by using the exposed credentials of Academy's current and former employees." (Consolidated Compl., ECF No. 74, ¶ 126). Specifically, Plaintiffs allege that BlackCat posted 9,300 credentials of *current and former employees,* including "full names, email addresses (which use the email domain "@academymortgage.com"), employee titles, phone numbers, social media ID numbers (including Facebook, Twitter, LinkedIn, and Instagram), usernames, user ID numbers, passwords, hashed passwords, and IP addresses." (*Id.* ¶ 125).

3. **Customer Notifications.** Plaintiff alleges that Academy Mortgage customers were notified that they had their SSN and full name compromised.

3

**4. Plaintiffs' Alleged Injuries.** Plaintiffs assert that "ALPHV BlackCat" ("BlackCat"), an alleged cybercriminal group, exfiltrated PII from Academy Mortgage during the Data Incident and published it to the "Dark Web" on May 14, 2023 (*Id.* ¶¶ 4, 133). They allege that they are "exposed to a present and imminent risk of fraud and identity theft" because "the PII that Defendant collected and maintained is now in the hands of data thieves and has been released on the dark web." (*Id.* ¶¶ 15, 17).

**(a) Loss of Privacy, Diminution in Value and Mitigation Costs.** Plaintiffs contend that they have suffered a "loss of privacy" (*id.* ¶ 213(f)), an injury in the form of "damage to and diminution in the value of their PII" (*id.* ¶ 225(a)), and that they will suffer "[a]scertainable losses in the form of out-of-pocket expenses and the value of their time" remedying or mitigating the effects of the Incident. (*Id.* ¶ 213(g)). They allege they will have to review and monitor their accounts, SSN, and credit report; place freezes on accounts; spend time on the phone; and contact financial institutions (*Id.* ¶¶ 224(a)–(f)) (collectively, "Mitigation Against Future Harm").

**(b) Emotional Distress.** Plaintiffs also allege that they are "forced to live with the anxiety that their PII may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy . . . ." (*Id.* ¶ 231) (collectively, "Emotional Distress").

**(c) Fraudulent Activity.** Plaintiff Smith alleges that his PII was used to obtain a loan in his name on April 21, 2023. (*Id.* ¶ 72). He does not allege that he incurred monetary losses as a result of the loan attempt. Plaintiff Bates alleges unauthorized charges on his Chase credit card following the data breach. (*Id.* ¶ 103). He also alleges that his PII was used to open a new credit card in his name. (*Id.*). He does not allege the timeframe during which this activity occurred.

Similarly to Plaintiff Smith, he does not allege that he incurred monetary losses as a result of the unauthorized charges and/or the new credit card attempt. (Plaintiffs Smith and Bates' loan and credit card fraud allegations are referred to as "Identity Theft Allegations".)

## ARGUMENT

These rule 12(b)(1) and 12(b)(6) motions are governed by the same pleading standard. A court must accept the factual allegations as true, but not legal conclusions or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 877–88 (10th Cir. 2017) (explaining that on a "facial attack on the complaint's allegations as to subject matter jurisdiction . . . the district court must accept the allegations in the complaint as true." (cleaned up)). The factual allegations must state a plausible right to jurisdiction and relief above the speculative level. *Twombly,* 550 U.S. at 555. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

### I. PLAINTIFFS LACK ARTICLE III STANDING.

"[E]ven in class actions, named plaintiffs must possess standing." *Donelson v. United States ex rel. Dep't of Interior*, 730 F. App'x 597, 601 (10th Cir. 2018). To establish Article III standing, Plaintiffs must show (1) a concrete-and-particularized, actual or imminent injury-in-fact; (2) that is fairly traceable to the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Utah Physicians for a Healthy Env't, Inc. v. TAP Worldwide, LLC,* 582 F. Supp. 3d 881, 891 (D. Utah 2022). Plaintiffs here have not alleged an injury-in-fact that is traceable to Academy Mortgage.

**A. Plaintiffs' Identity Theft allegations are not traceable to the PII published on the Dark Web.**

The traceability prong requires a plaintiff to show "a causal connection between the injury and the conduct complained of." *Stern v. Academy Mortg. Corp.,* No. 2:24-CV-00015-DBB-DAO, 2025 WL 239036, at *4 (D. Utah Jan. 17, 2025) (cleaned up); *see also Alfwear, Inc. v. IBKUL Corp.,* 672 F. Supp. 3d 1174, 1184 (D. Utah 2023) (same). "As part of this showing, a plaintiff must establish that its injury was not the result of the independent action of some third party not before this court." *Stern,* 2025 WL 239036, at *4 (cleaned up). Traceability cannot be based on "a speculative chain of possibilities." *Id.* (cleaned up). Plaintiffs allege two instances of identity theft that they argue establish Plaintiffs' standing.

1. **Plaintiff Smith's Alleged Loan Fraud.** The timing of the loan fraud severs the alleged causal connection. Plaintiffs allege that "on or around May 14, 2023, ALPHV BlackCat then published stolen PII on the Dark Web." Plaintiff Smith alleges that the fraudulent loan was taken out before that date. This Court has previously refused to find standing here where the alleged fraud predated the publishing of PII on the Dark Web. *Stern*, 2025 WL 239036, at *4 (D. Utah Jan. 17, 2025) (cleaned up) (rejecting causal connection given that "the identity theft occurred weeks before BlackCat allegedly took credit for the attack and issued a ransom demand to Academy"). The Court should adhere to its previous ruling and find that Plaintiff Smith has failed to show traceability.

2. **Plaintiff Bates' Alleged Credit Card Fraud.** Plaintiff Bates is a former employee. Plaintiffs allege that employee emails, social media, contact information, and passwords were compromised. Importantly, they don't allege that BlackCat posted or obtained employee SSNs or account information. Although Bates alleges loan fraud, he doesn't explain how a hacker could

6

open a fraudulent loan using his email and social media information. As Plaintiff Bates suggests, to use his credit card or open a new card, a criminal would need his credit card number and his SSN. Absent a link between the kind of compromised information and the fraudulent activity, Plaintiff Bates cannot show traceability.

Courts have generally concluded that plaintiffs lack standing where the identity theft is incongruent with the information allegedly compromised. *See, e.g., In re Uber Techs., Inc., Data Sec. Breach Litig.,* Nos. ML 18-2826 PSG, CV 18-2970 PSG, 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) ("[T]he Court cannot discern, and Plaintiff does not sufficiently explain, how the hackers could use one's contact information and driver's license number to gain access to additional personal information [necessary to cause their alleged injuries]."); *Blood v. Labette Cnty. Med. Ctr.,* No. 5:22-CV-4036-HLT-KGG, 2022 WL 11745549, at *5 (D. Kan. Oct. 20, 2022) (plaintiffs lacked standing based on unauthorized charges to bank account where there was no allegation that plaintiffs' bank account number or debit card number was accessed in breach). This Court should adhere to these rulings and find that Plaintiff Bates' alleged loan fraud lacks a causal connection to the data security incident at Academy Mortgage.

### B. Plaintiffs Fail to Allege Any Other Misuse that Would Confer Standing.

There are seven potential grounds for standing in the Consolidated Complaint: (1) diminution in PII value; (2) mitigation efforts; (3) emotional distress; (4) increased risk of fraud, theft, or misuse of PII; (5) an increase in spam calls; (6) Plaintiff Bates' claim of unauthorized credit card charges and a credit card opened in his name; and (7) Plaintiff Smith's claim of a loan taken out in his name. The Court previously rejected each of these grounds. *Stern,* 2025 WL

239036, at *5–7. This Court should again dismiss Plaintiffs' Consolidated Complaint for lack of standing.

## II. PLAINTIFFS FAILS TO STATE A PLAUSIBLE CLAIM TO RELIEF.

Standing problems aside, Plaintiffs also fail to allege a plausible claim for relief.

### A. The Court Should Dismiss Plaintiffs' Negligence Claims in Count I.

Plaintiffs have failed to allege a plausible claim to relief in Count I because (1) Utah law does not recognize a cause of action for future risk of harm, and (2) their negligence claim is barred by the economic loss rule.

**1. Utah law does not recognize a cause of action for Plaintiffs' claims to recover damages based on the increased risk of future harm.**

It is hornbook law that negligence requires existing harm. "The harm requirement is one of the most fundamental tenets of negligence law: the tort is incomplete and there can be no legal redress without proof of actual damage." Yehuda Adar & Ronen Perry, *Negligence Without Harm,* 111 Geo. L.J. 187, 188 & n.1 (2022) (citing the leading and contemporary authorities on tort law to affirm that "the harm requirement is a general characteristic of tort law"). "Mere exposure to risk, even when it is foreseeable and unreasonable, is not actionable." *Id.* at 188. Because "[m]aterialization of the risk" is "central to an action in negligence," "courts are staunchly reluctant to grant relief when plaintiffs bring such actions for the mere creation or enhancement of risk." *Id.* at 192. Holding otherwise has been considered "unthinkable." *Id.* at 189. Yet that is what Plaintiffs ask the Court to do.

In the last 50 years, a minority of jurisdictions have recognized a single exception to the hardened requirement of present harm: medical monitoring in toxic tort cases. Utah is one of those jurisdictions. *See Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 979 (Utah 1993). Only after

a careful public policy discussion, the *Hansen* Court permitted an independent cause of action for medical monitoring, but only when a plaintiff can prove exposure to a "toxic substance" caused by the defendant's negligence that produced an increased risk of illness for which a medical test allowing early detection exists. *Id.*

This narrow exception does not extend to data breach cases, or the types of injuries Plaintiffs allege here. A careful reading of Plaintiffs' tort claims reveals that their Identity Theft, Emotional Distress, and Mitigation Against Future Harm damages are based on a future injury that hasn't occurred.[1] Although Plaintiffs have disguised their novel tort claims under traditional tort principles, they are nothing close to traditional common law claims. Under Utah law, Plaintiffs' alleged legal theory does not exist. Plaintiffs' claims would require this Court to rule that the Utah Supreme Court would create a new cause of action like it did for medical monitoring. Based on the facts Plaintiffs allege, that would be too big of an *Erie* guess to make. *See generally Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). The Court should dismiss Count I on this ground.

**2. Plaintiffs' negligence claims are barred by the economic loss rule.**

Despite the prima facie problems on damages, Plaintiffs' claims for mitigation damages nevertheless fail under the economic loss rule. *See Sunridge Dev. Corp. v. RB & G Eng'g, Inc.,* 2010 UT 6, ¶ 28, 230 P.3d 1000. The economic loss rule prevents a plaintiff's recovery in tort for damages of a purely economic nature. *See id.* Economic losses include "[d]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits . . . as well as the diminution in the value of the product." *SME Indus., Inc. v. Thompson, Ventulett,*

---

[1] *Supra* at III.

*Stainback & Assocs., Inc.,* 2001 UT 54, ¶ 32, 28 P.3d 669 (cleaned up). As a result, Plaintiffs' negligence claim is barred to the extent they seek economic losses. *See Sunridge Dev. Corp.,* 2010 UT 6, ¶ 28. Accordingly, the Court should dismiss Count I as barred by the economic loss rule.

### B. The Court Should Dismiss Plaintiffs' Breach of Implied Contract Claim in Count II.

Plaintiffs ask this Court to enforce an implied contract. A contract implied in fact is a "contract" established by conduct. *Davies v. Olson,* 746 P.2d 264, 269 (Utah Ct. App. 1987). The elements of a contract implied in fact are (1) the defendant asked the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate them for those services; and (3) the defendant knew or should have known that the plaintiff expected compensation. *Id.* at 269.

Plaintiffs allege that an implied contract was formed on the mere act of providing their PII to Academy Mortgage, which, in receiving the PII, Academy Mortgage became obligated to safeguard Plaintiffs' PII. (Consolidated Compl., ECF No. 74, ¶ 113.) This barebones recital doesn't meet the three required elements. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). And without an allegation of material terms about safeguarding an employee's PII, there can be no breach-of-implied contract in a data breach case. *See Longenecker-Wells v. Benecard Servs. Inc.,* 658 F. App'x 659, 662 (3d Cir. 2016) ("Plaintiffs have failed to plead any facts supporting their contention that an implied contract arose between the parties other than that [Defendant] required Plaintiffs' personal information as a prerequisite to employment."); *see also In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.,* No. 19-md-2904, 2021 WL 5937742, *19 (D.N.J. Dec. 16, 2021) ("[C]ourts have consistently held that the fact that a defendant required plaintiffs to provide personal information does not alone support the inference that the parties agreed for the defendant to secure this information."); *Tate v. EyeMed Vision Care, LLC,* No. 1:21-cv-36, 2023

WL 6383467, at *8 (S.D. Ohio Sept. 29, 2023) (finding the plaintiffs' threadbare allegation that they and the defendant entered into an implied contract whereby the defendant would safeguard and protect the plaintiffs' PII insufficient for purposes of avoiding a motion to dismiss their breach of implied contract cause of action); *Weekes v. Cohen Cleary P.C.,* 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (explaining that "the vast majority of commercial transactions today require the disclosure of PII"; and that where PII was provided as a condition of enrollment, employment or service is "insufficient to support an implied contract claim"). The Court should dismiss Plaintiffs' Count II with prejudice.

### C. The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim in Count III Because Plaintiffs Does Not Allege How Academy Mortgage Benefited from Receiving Plaintiffs' Private Information.

There are three elements to an unjust enrichment claim: (1) "benefit conferred"; (2) knowledge by the recipient of the benefit; and (3) "acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B & L Auto, Inc.,* 12 P.3d 580, 582 (Utah 2006) (cleaned up). While some courts have recognized that victims of a data breach may be able to state a claim for unjust enrichment "in situations where businesses commoditize or receive an independent pecuniary benefit from holding the Personal Information," that is not the case here. *See*, *e.g.*, *In re Am. Med. Collection Agency,* 2021 WL 5937742, *18.

The Consolidated Complaint simply provides a conclusory statement that Academy Mortgage "benefitted from the receipt of Plaintiffs' and Class members' PII" for "business purposes," while Plaintiff and the class should have had their PII protected with adequate data security. (Consolidated Compl., ECF No. 74, ¶¶ 292-293.) But this is not sufficient to show that

Academy Mortgage was in any way enriched at Plaintiffs' expense. Specifically, Plaintiffs do not allege that Academy Mortgage received any independent pecuniary benefit from retaining Plaintiffs' PII.

Courts in data breach matters nationwide have held that a traditional exchange of payment for goods and services is not a circumstance in which it is "unjust" to allow the defendant to retain the benefit. *See*, *e.g.*, *Tate*, 2023 WL 6383467, at *8. Further, in a data breach case, the plaintiff must allege that they "paid extra for a security package that they were promised and did not receive." *Webb v. Injured Workers Pharmacy, LLC,* No. 22-cv-10797, 2023 WL 5938606, at *4 (D. Mass. Sept. 12, 2023). Here, Plaintiffs got what they paid for—mortgage services. *Cf. Gordon v. Chipotle Mexican Grill, Inc.,* 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) ("Plaintiffs paid for burritos; Plaintiffs received burritos."). Because Academy Mortgage was not unjustly enriched by Plaintiffs' payments for mortgage services, this claim is implausible on its face. The same goes for employees. Count III should accordingly be dismissed with prejudice.

  **D. The Court Should Dismiss Plaintiffs' Invasion of Privacy Claims in Count IV Because Plaintiffs Have Not Alleged Intentional Interference.**

To establish an invasion of privacy claim, a plaintiff must show (1) "an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party" that (2) "would be highly offensive to the reasonable person." *Stien v. Marriott Ownership Resorts, Inc.,* 944 P.2d 374, 378 (Utah Ct. App. 1997) (cleaned up). For example, wiretap eavesdropping, peaking into windows, persistent and unwanted phone calls can give rise to a claim. *Id.* Plaintiffs do not allege an intrusion by Academy Mortgage—certainly not an intentional one like the examples above. The Court should dismiss Count IV.

E. **The Court Should Dismiss Plaintiffs' Claim for Violation of the California Customer Records Act ("CCRA") in Count V Because Academy Mortgage is Immune from Liability.**

Plaintiffs' CCRA claim fails because (1) Academy Mortgage is exempt from liability under § 1798.81.5(e)(2); and (2) Plaintiffs' allegations do not establish how the purported data breach notification delay caused the damages.

Under Cal. Civ. Code § 1798.81.5(e)(2), financial institutions are exempt from liability. *See* 12 U.S.C. § 1843(k) (defining financial activities, in part, as "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities"); *see also* CAL. FIN. CODE § 4052(c) (incorporating 12 U.S.C. § 1843(k)). Given that Academy Mortgage is a financial institution (and Plaintiffs admit such in their Consolidated Complaint, ECF No. 74, ¶ 144), Academy Mortgage is immune from liability under the CCRA.

Plaintiffs also fail to allege injury arising from Academy Mortgage's delayed notification of the data breach. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014) ("[A] plaintiff must allege actual damages flowing from the unreasonable delay (and not just the intrusion itself) in order to recover actual damages."). While Plaintiffs contend that Academy Mortgage "waited almost two months to provide notice," Plaintiffs do not provide any additional support establishing *how* Academy Mortgage's alleged delay resulted in an injury. (*See* Consolidated Compl., ECF No. 74, ¶ 317); *see also Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016) (dismissing section 1798.82 claim "because Plaintiff has failed to trace any harm from Defendants' delayed notification or to demonstrate a nexus between the alleged harm flowing from the delayed notification and Defendants' actions"). Accordingly, Count V should be dismissed.

## F. The Court Should Dismiss Plaintiffs' Claims for Violation of the California Consumer Privacy Act ("CCPA") in Count VI Because Plaintiffs' Claims are Conclusory.

To establish a claim under the CCPA, "a plaintiff must allege that their personal identifiable information was accessed as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." *Chen v. JPMorgan Chase Bank, N.A.,* 745 F. Supp. 3d 1025, 1033 (C.D. Cal. 2024) (citing Cal. Civ. Code § 1798.150(a)(1)). In support of this claim, Plaintiffs simply restate the statutory requirements, providing conclusory allegations insufficient to state a claim under the CCPA. (*See* Consolidated Compl., ECF No. 74, ¶ 325.)

Additionally, Plaintiffs' CCPA statutory damage claims must be dismissed for failure to comply with the pre-suit notice requirements set forth in Cal. Civ. Code § 1798.150(b). *See* § 1798.150(b) ("[P]rior to initiating any action against a business for statutory damages on an individual or class-wide basis, a consumer provides a business 30 days' written notice identifying the specific provisions of [§ 1798.150] the consumer alleges have been or are being violated."). Accordingly, Count VI should be dismissed.

## G. The Court Should Dismiss Plaintiffs' Claims for Violation of the California Unfair Competition Law ("UCL") in Count VII Because Plaintiffs Do Not Allege an Injury in Fact.

To establish a UCL claim, a plaintiff must have "suffered injury in fact and . . . lost money or property as a result of unfair competition." *Rubio v. Cap. One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting Cal. Bus. & Prof. Code § 17204); *see also Hall v. Time Inc.,* 70 Cal. Rptr. 3d 466, 467 (Cal. Ct. App. 2008) (the phrase "as a result of" in the UCL "imposes a causation requirement" meaning that "the alleged unfair competition must have caused the plaintiff to lose money or property"). As noted above, the alleged diminution of value in PII is no such loss to

property, and Plaintiffs do not allege any ascertainable monetary harm. Count VII should be dismissed with prejudice.

**H. The Court Should Dismiss Plaintiffs' Claims for Violation of the Washington Consumer Protection Act ("WCPA") in Count VIII Because Plaintiffs Lack Statutory Standing.**

Out of the five elements required to establish a claim under the WCPA, only one is relevant here: "damage to business or property." *Keodalah v. Allstate Ins. Co.,* 499 P.3d 1040, 1047 (Wash. 2019). Plaintiffs, including Allen and Smith, fail to establish that they sustained an injury to property. (*See* Consolidated Compl., ECF No. 74, ¶ 349). Accordingly, Plaintiffs have failed to property allege the elements necessary to sustain a claim under the WCPA. Count VIII should therefore be dismissed.

**I. The Court Should Dismiss Plaintiffs' Claims for Violation of the Idaho Consumer Protection Act ("ICPA") in Count VIX (sic) Because Plaintiffs Do Not Allege an Unfair Act.**

Of the three elements sufficient to establish an ICPA claim, one element is applicable at this juncture: an ascertainable loss of money or property (real or personal). *See Pickering v. Sanchez,* 544 P.3d 135, 142 (Idaho 2024). As noted above, Plaintiffs' alleged diminution in value in PII is no such loss to property. Plaintiff Kucherry and the Idaho Subclass do not allege any ascertainable monetary harm. Accordingly, Count VIX (sic) should be dismissed.

## CONCLUSION

For the reasons set forth above, Academy Mortgage respectfully requests that this Court grant its Motion to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint in its entirety.

DATED this 27 day of June 2025.

15

**FREEMAN MATHIS & GARY, LLP**


 /s/    *Justin J. Boron*
Justin J. Boron (*pro hac vice*)

**RAY QUINNEY & NEBEKER P.C**
Kamie F. Brown
Kristina M. DuBois
*Attorneys for Academy Mortgage Corporation*

16