# — EXHIBIT A —

Brittany Resch (admitted *pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Ste. 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com

Andrew W. Ferich (admitted *pro hac vice*)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Anthony L. Parkhill (admitted *pro hac vice*)
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph St., Ste. 1630
Chicago, IL 60606
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
aparkhill@barnowlaw.com

[*Additional Counsel Appear on Signature Page*]

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| LAZARO STERN, CELESTE ALLEN, LISA KUCHERRY, PETER SMITH, SHARON THOMPSON, and CHARLY BATES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | Case No.: 2:24-cv-00015-DBB-DAO<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

# PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**MOTION**

**PLEASE TAKE NOTICE** that Plaintiffs,[1] individually and on behalf of the putative class, move pursuant to Federal Rule of Civil Procedure 23(e) for an Order: (i) granting preliminary approval of the proposed Settlement; (ii) preliminarily certifying the Settlement Class for purposes of settlement only; (iii) appointing Plaintiffs as the Settlement Class Representatives; (iv) appointing Brittany Resch of Strauss Borrelli PLLC, Andrew W. Ferich of Ahdoot & Wolfson, PC, and Anthony L. Parkhill of Barnow and Associates, P.C. as Settlement Class Counsel; (v) approving the Settling Parties' proposed form and method of giving Notice of the pendency of this action and the Settlement to the Settlement Class; (vi) directing that Notice be given to the Settlement Class; (vii) scheduling a Final Fairness Hearing at least 120 days after entry of the Preliminary Approval Order, at which time the Court will consider the requests for final settlement approval, a Fee Award and Costs, and Service Awards; and (viii) granting such other relief and further relief as the Court deems just and proper. Defendant does not object to the relief sought by Plaintiffs.

This motion is based upon the accompanying memorandum of law, the exhibits to this motion, the Settlement Agreement and its exhibits; the Joint Declaration of Class Counsel; and all prior pleadings and proceedings properly before the Court.

[1] All capitalized terms in this brief have the same meanings ascribed to them in the Settlement Agreement. *See* Settlement Agreement, Section II (Definitions).

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

III. THE SETTLEMENT AGREEMENT........................................................................ 3

A. DEFINITION OF THE CLASS........................................................................ 3

B. SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS ...... 3

1. Cash Payments .................................................................................. 3

a. Documented Losses ........................................................................... 3

b. Pro Rata Cash Payment...................................................................... 4

2. Credit Monitoring ............................................................................... 4

3. Claims Administration ........................................................................ 4

a. Notice .............................................................................................. 4

b. Exclusion and Objection ..................................................................... 6

c. Distribution of Benefits........................................................................ 7

4. Fee Award and Costs, and Service Awards ............................................ 8

IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............ 8

A. STANDARDS FOR PRELIMINARY APPROVAL............................................ 9

1. THE *JONES* FACTORS AND RULE 23(e) FACTORS ARE SATISFIED ........... 11

a. *Jones* Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly Negotiated at Arm's-Length........................................................................ 11

b. *Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation ........................................................... 13

c. *Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation ........................................... 14

d. *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Parties and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees Are Fair and Reasonable ........ 15

e. Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement .. 16

f. Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief . 17

g. Rule 23(e)(2)(C)(iv): There are No Agreements Required to be Identified ......... 17

V. THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION .......... 18

A. THE RULE 23(a) FACTORS ARE MET ........ 18

1. The Settlement Class is So Numerous that Joinder is Impracticable...................... 18

2. There Are Common Questions of Law and Fact ........ 19

3. Plaintiffs' Claims and the Defenses are Typical of the Settlement Class ............... 20

4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class ........... 21

B. THE SETTLEMENT CLASS SATISFIES RULE 23(b)(3) ........ 22

1. Common Questions Predominate ........ 22

2. A Class Action is the Superior Method for Adjudication ........ 23

VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM............... 24

VII. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)........................................ 18, 21, 22

*Amoco Prod. Co. v. Fed. Power Comm'n*,
465 F.2d 1350 (10th Cir. 1972)........................................ 9

*Ashley v. Reg'l Transp. Dist.,*
2008 WL 384579 (D. Colo. Feb. 11, 2008)........................................ 11

*CGC Holding Co., LLC v. Hutchens,*
773 F.3d 1076 (10th Cir. 2014)........................................ 23

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,*
888 F.3d 455 (10th Cir. 2017)........................................ 17

*Circle v. Jim Walter Homes, Inc.,*
535 F.2d 583 (10th Cir. 1976)........................................ 18

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996)........................................ 11

*Desktop Direct, Inc. v. Digital Equip. Corp.,*
993 F.2d 755 (10th Cir. 1993), aff'd, 511 U.S. 863 (1994)........................................ 9

*DG v. Devaughn,*
594 F.3d 1188 (10th Cir. 2010)........................................ 19, 20

*Hammond v. The Bank of N.Y. Mellon Corp.,*
2010 WL 2643307 (S.D.N.Y. June 25, 2010)........................................ 13

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.,*
271 F. App'x. 41 (2d Cir. 2008)........................................ 24

*In re Crocs, Inc. Sec. Litig.,*
No. 07-cv-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013)........................................ 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
293 F.R.D. 21 (D. Me. 2013)........................................ 14

*In re Motor Fuel Temperature Sales Pracs. Litig.,*
286 F.R.D. 488 (D. Kan. 2012)........................................ 10

*In re Onix Group, LLC Data Breach Litig.*,
No. 23-2288, 2024 WL 3015528 (E.D. Pa. June 14, 2024) ..... 21

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009) ..... 13, 14

*Jones v. Nuclear Pharmacy, Inc.*,
741 F.2d 322 (10th Cir. 1984) ..... 9

*Lane v. Page*,
272 F.R.D. 558 (D.N.M. 2011) ..... 19

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) ..... 12, 14, 15

*Maez v. Springs Auto. Group, LLC*,
268 F.R.D. 391 (D. Colo. 2010) ..... 21

*Marcus v. State of Kansas, Dep't of Revenue*,
209 F. Supp. 2d 1179 (D. Kan. 2002) ..... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..... 24

*Oppenlander v. Standard Oil Co. (Indiana)*,
64 F.R.D. 597 (D. Colo. 1974) ..... 15

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
313 F.R.D. 117 (D. Colo. 2016) ..... 21

*Rex v. Owens ex rel. State of Okl.*,
585 F.2d 432 (10th Cir. 1978) ..... 18

*Rhodes v. Olson Assocs., P.C.*,
308 F.R.D. 664 (D. Colo. 2015) ..... 11, 15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..... 17

*Rosenfeld v. Lenich*,
No. 18-CV-6720-NGGPK, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ..... 17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) ..... 9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................................ 18, 19, 20

**Other Authorities**

*Manual for Complex Litigation* (4th ed. 2004)........................................................... 9, 24

McLaughlin on Class Actions (8th ed. 2011) ................................................................... 12

*Newberg on Class Actions* (Fourth) (2002) .................................................................. 9, 21

**Rules**

Federal Rules of Civil Procedure, Rule 23 . i, ii, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24

## MEMORANDUM

## I. INTRODUCTION

After over two years of hard-fought litigation in this data breach class action lawsuit, the Settling Parties[2] have agreed to a Settlement that provides substantial monetary and other benefits to the Settlement Class. Specifically, the Settlement creates a common Settlement Fund in the amount of $1,995,000 that will be used to pay for Notice, Costs of Claims Administration, all Settlement Class Member benefits, any Fee Award and Costs and service awards, and Taxes.

Under the Settlement, Settlement Class Members may claim any and all of the following benefits: 1) reimbursement for documented losses up to $3,000 per Settlement Class Member, subject to documentary proof; 2) three years of one-bureau credit monitoring that will also provide dark web monitoring, identity theft insurance coverage for up to $1,000,000.00, and fully managed identity recovery services; and/or 3) a Pro Rata Cash Payment.

As detailed below, the Settlement is an excellent result. It provides a familiar and standard menu of relief options to impacted persons, as well as requiring Defendant to make certain business practices changes to enhance their data security on a go-forward basis. The Settlement falls within the range of final judicial approval and includes a comprehensive Notice Program. Defendant does not oppose the relief requested in this motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or around March 21, 2023, Defendant Academy Mortgage Corp. ("Academy") became aware of potential unauthorized access to its network (i.e., the Data Incident). After an

---

[2] All capitalized terms not otherwise defined in this motion share the definition ascribed to them in the Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement" or "SA").

investigation, Academy determined personally sensitive Personal Information may have been accessed and taken during the Data Incident. The impacted information includes, but is not limited to, first and last names, Social Security numbers, and dates of birth. Academy initially identified approximately 285,000[3] individuals whose Personal Information may have been impacted by the Data Incident, and notice was sent to those individuals beginning in December 2023.

On the heels of the Data Incident, numerous lawsuits were subsequently filed against Defendant in the United States District Court for the District of Utah beginning in January 2024, and all related actions were ultimately consolidated into this litigation. Plaintiffs filed the Second Amended Class Action Complaint on May 27, 2025, alleging various common law and statutory causes of action. ECF No. 74.

The Settling Parties attended two mediations in this litigation. First, on March 13, 2026, the parties attended a full-day mediation with Mike Ungar from UB Greensfelder LLP. No settlement was reached. The parties continued with extensive and hard-fought litigation for more than three months. Then, on June 30, 2026, the parties again participated in an all-day mediation overseen this time by Steven Jaffe, of Upchurch Watson White & Max. The parties engaged in hard-fought arm's-length negotiations and eventually reached an agreement in principle on all material terms. Weeks of continued discussions and negotiation of the finer settlement details ensued, until the Settling Parties finalized all details of and memorialized the Settlement presented herein. The Settling Parties have worked diligently to finalize the Settlement Agreement. Plaintiffs now seek preliminary approval of that Agreement. Plaintiffs and proposed Settlement Class

[3] This number is subject to deduplication as the Claims Administrator analyzes the Class Member data during the claims administration process. The notice population may be smaller.

Counsel believe that the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members. The Settlement should be preliminarily approved.

## III. THE SETTLEMENT AGREEMENT

### A. DEFINITION OF THE CLASS

The parties contemplate certification (for Settlement purposes only) of a nationwide Settlement Class. The proposed Settlement Class is defined as follows:

> All living persons residing in the United States who were notified by Defendant that their Personal Information may have been impacted by the Data Incident

SA ¶ 39. The Settlement Class specifically excludes: (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff; (iii) all individuals who make a timely Request for Exclusion from this proceeding using the correct protocol for opting out; and (iv) the attorneys representing the Settling Parties in the Litigation. *Id*.

### B. SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS

#### 1. Cash Payments

a. Documented Losses

Under the Settlement, Settlement Class Members will be reimbursed for ordinary out-of-pocket expenses that are related to the Data Incident up to $3,000 per Settlement Class Member. SA ¶ 57. To receive a payment for documented losses, a Settlement Class Member must attest that the losses or expenses were incurred as a result of the Data Incident. *Id.* Settlement Class Members will be required to submit reasonable third-party documentation supporting the losses. *Id.*

b. Pro Rata Cash Payment

In addition to making a Claim for documented losses, Settlement Class Members may elect to receive a Pro Rata Cash Payment. *Id.* ¶ 59. The amount of the payment will be calculated in accordance with the plan of allocation set forth in the Settlement. *Id.* ¶ 61. Notably, Settlement Class Members who are California residents will receive a stepped-up payment under the plan of allocation, to account for their statutory damages claims. *Id.*

**2. Credit Monitoring**

In addition to one or both Settlement Payments, all Settlement Class Members are eligible to claim three years of one-bureau credit monitoring. The credit monitoring benefit will be provided by a vendor agreed to by the Settling Parties and includes at least the following features: 36 months of one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000.00, and fully managed identity recovery services. *Id.* ¶ 58.

**3. Claims Administration**

The Settling Parties have chosen a third-party Claims Administrator, Kroll Settlement Administration, to provide Notice of the Settlement to the Settlement Class and otherwise administer the Settlement in accordance with the Settlement Agreement. *Id.* ¶ 7; *id.* § V. The Costs of Claims Administration will be paid from the Settlement Fund. *Id.* ¶ 54. The Claims Administrator will administer the Settlement and will review Settlement Class Members' claims pursuant to the terms set forth in the Settlement Agreement. *Id.* § V.

a. Notice

The Notice Program is straightforward and structured to satisfy due process. Defendant will provide the Claims Administrator with the Class List no later than 7 days after entry of the

Preliminary Approval Order. SA ¶ 76(a). To the extent necessary, Defendant will cooperate with updating the Class List to accomplish the Notice Program and otherwise administer the Settlement. Then, following entry of the Preliminary Approval Order, the Claims Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. SA ¶¶ 76-77. Where physical addresses have been provided for Settlement Class Members, postcard Short Notices (Exhibit D) shall be sent, with an attached "tear-off" Claim Form with prepaid postage for those who wish to submit Claims that do not require documentation, i.e., claims for credit monitoring and a Pro Rata Cash Payment. *Id.* ¶ 47. The Claim Form will be substantially in the form of Exhibit A attached to the Settlement Agreement.

The Short Notice shall include, among other information: (a) a description of the material terms of the Settlement; (b) identification of the applicable class and applicable Released Parties for each Settlement Class Member; (c) how to submit a Claim Form; (d) the Claim Deadline; (e) the Opt-Out Date for Settlement Class Members to request exclusion from the Settlement Class; (f) the Objection Date for Settlement Class Members to object to the Settlement and/or application for a Fee Award and Costs; (g) the Final Fairness Hearing date; and (h) the Settlement Website address at which Settlement Class Members may access the Agreement and other related documents and information. *Id*. The Claims Administrator shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Fairness Hearing changes, the Claims Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Fairness Hearing changes. *Id.* ¶ 75.

The Claims Administrator shall establish, maintain, and periodically update the Settlement Website. The Claims Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted online directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Claims Administrator.

The Notice Deadline—i.e., the date by which the Claims Administrator shall establish the Settlement Website, toll-free telephone line, and commence the initial mailing of the Short Notice—shall be 30 days after entry of the Preliminary Approval Order, and Notice shall be completed promptly thereafter. *Id.* ¶ 26.

b. Exclusion and Objection

Settlement Class Members who do not wish to be included in the Settlement may choose to exclude themselves by mailing a written letter requesting exclusion to the Claims Administrator, postmarked on or before the Opt-Out Date. To be valid, Persons wishing to opt out of the Settlement Class must adhere to the requirements of the Settlement. SA ¶¶ 78-80 (opt-out procedures). Any Settlement Class Member who does not submit a timely and valid request to be excluded shall be bound by the terms of the Settlement Agreement. *Id.* ¶ 79.

The Long Notice shall also include a procedure—provided for in the Settlement—for Settlement Class Members to object to the Settlement and/or application for a Fee Award and Costs. Objections must be sent by U.S. Mail to the Claims Administrator and filed with the Court. For an objection to be considered by the Court, the objection must be submitted no later than the Objection Date and adhere to the requirements of the Settlement Agreement and Long Notice. *See* SA ¶¶ 81-82.

Additionally, within 7 days after the Opt-Out Date as set forth in the Settlement Agreement and as approved by the Court, the Claims Administrator shall furnish to counsel for the Settling Parties a complete list of all timely and valid Requests for Exclusion. *Id.* ¶ 98.

c. Distribution of Benefits

The Claims Administrator will collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Claims Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Claims Administrator shall also examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Claims Administrator shall have the sole authority to determine whether a Claim Form by any claimant is a Valid Claim. *Id.* ¶ 91.

The Claims Administrator will send credit monitoring activation codes within 45 days after the Effective Date or 21 days after a Claim is approved, whichever is later. *Id.* ¶ 67(k). No later than 30 days after the Effective Date or 21 days after a Claim is approved, whichever is later, the Claims Administrator shall distribute the Settlement Payments. *Id.* ¶92. The Claims Administrator must first use the funds available in the Settlement Fund (after payment for the Costs of Claims Administration and Taxes) to make payments for any service awards, followed by any Fee Award and Costs, followed by Valid Claims for credit monitoring, followed by Valid Claims for documented loss payments, followed by Valid Claims for Pro Rata Cash Payments. *Id.* ¶¶ 54, 61.

To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of all Settlement Payments to the Settlement Class Members, a subsequent Settlement Payment will be made evenly to all Settlement Class Members with Valid Claims who cashed or

deposited the initial payment they received, provided that the average check amount is equal to or greater than three dollars and no cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average check or digital payment in a distribution is less than three dollars ($3.00), whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed to the Non-Profit Residual Recipient. *Id.* ¶ 65.

#### 4. Fee Award and Costs, and Service Awards

The Settlement Class Representatives may seek a service award of up to $2,500 each, subject to Court approval. *Id.* ¶ 88. Any service award will be paid from the Settlement Fund. Class Counsel shall also apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund (i.e., $665,000), plus, separately, reimbursement of litigation expenses and costs not to exceed $50,000. *Id.* ¶ 87. Any Fee Award and Costs and service awards approved by the Court shall be paid by the Claims Administrator out of the Settlement Fund as directed by Class Counsel within 14 days of the Effective Date. *Id.* ¶ 89. Class Counsel will determine the allocation of attorneys' fees and costs between Class Counsel and all Plaintiffs' counsel.

## IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As further described herein, the Settlement provides fair, reasonable, and adequate compensation for the Settlement Class under the facts and circumstances of this Action. The Settlement was achieved only after extensive arm's-length negotiations among the Settling Parties, including two all-day mediation sessions, and provides valuable benefits and monetary compensation to Settlement Class Members. As such, and for the reasons more specifically set forth below, it is a fair, reasonable, and adequate settlement and should be granted preliminary approval under Rule 23(e).

**A. STANDARDS FOR PRELIMINARY APPROVAL**

Rule 23(e) provides that a proposed settlement may be approved only after a "finding that it is fair, reasonable, and adequate." Approval of a proposed settlement is "committed to the sound discretion" of the court. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187 (10th Cir. 2002) (citation omitted). However, "[i]n exercising its discretion, the trial court *must* approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984) (emphasis added). As a matter of public policy, the law favors and encourages settlements. *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354–55 (10th Cir. 1972); *see also Desktop Direct, Inc. v. Digital Equip. Corp.,* 993 F.2d 755, 758 (10th Cir. 1993), aff'd, 511 U.S. 863 (1994) (agreeing that "encouragement of out-of-court settlements is desirable"); *Newberg on Class Actions* (Fourth) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Review of a proposed class action settlement generally involves two steps. *Manual for Complex Litigation* § 21.632, at 320 (4th ed. 2004). "First, counsel submit the proposed terms of settlement and the judge makes a *preliminary* fairness evaluation." *Id.* At the preliminary approval stage, the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the final fairness hearing." *Id.* at 321. Second, at a final fairness hearing, the Court determines whether the proposed settlement is fair, reasonable, and adequate under all of the circumstances. *Id*. At the current juncture, the Settling Parties only request Preliminary Approval of the Settlement.

It is important to note the preliminary ruling is not a fairness (also referred to oftentimes as a "final approval") ruling. "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.,* No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (alteration in original) (citation and internal quotation marks omitted). For this reason, "the standards for preliminary approval of a class action settlement are not as stringent" as those applied at the final fairness hearing. *Id.* "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor Fuel Temperature Sales Pracs. Litig.,* 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation omitted).

The Tenth Circuit has identified four factors (the "*Jones* Factors") for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324. These factors are in addition to the factors listed under Rule 23(e)(2).[4]

[4] Fed. R. Civ. P. 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and

**1. THE *JONES* FACTORS AND RULE 23(e) FACTORS ARE SATISFIED**

This Settlement satisfies the factors contained in Rule 23(e)(2) and the *Jones* factors, as demonstrated below. Thus, Plaintiffs and their counsel respectfully request the Court preliminarily approve the Settlement so that Notice can be disseminated to Settlement Class Members.

a. *Jones* Factor 1 and Rule 23(e)(2) (A–B): The Settlement was Fairly and Honestly Negotiated at Arm's-Length

Courts examine "[t]he fairness of the negotiating process" "'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.,* 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008). This Settlement is the product of years of litigation and legitimate, arm's-length negotiations. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("[When] the parties have bargained at arms' length, there is a presumption in favor of the settlement"). There is no doubt that the Settlement was fairly and honestly negotiated. *See Rhodes v. Olson Assocs., P.C.,* 308 F.R.D. 664, 667 (D. Colo. 2015) (no indication of collusion weighed in favor of approval).

The parties reached a settlement only after vigorously litigating the action. Plaintiffs initially filed numerous lawsuits. Class Counsel successfully moved for consolidation of the actions, structured effective management of the litigation, drafted and filed numerous iterations of

---

adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

the complaint, undertook extensive work and efforts in discovery, and exchanged informal discovery and participated in multiple mediation sessions with Defendant. Class Counsel's litigation strategy led to the favorable and swift settlement obtained for the Settlement Class.

The proposed settlement was the result of hard-fought, arms-length negotiations between highly experienced counsel, with the assistance of experienced mediators, Michael Ungar from UB Greensfelder LLP (first session), and Steven Jaffe of UWW-ADR (second session). *See* Joint Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") (attached hereto as Exhibit 2) ¶ 2. Counsel engaged in two full-day mediation sessions and, having reached a deal in principle following the second session, they continued negotiations for weeks afterwards and worked to finalize the terms of the Settlement. *Id.* ¶ 3. In sum, because the Settlement "resulted from arm's length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable" for purposes of preliminary approval. *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006); *see also* 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation weighs in favor of a finding of non-collusiveness and, at least when a litigation class has already been certified, may receive a presumption of reasonableness and the absence of collusion.").

Further, in negotiating the Settlement and litigating the action, Plaintiffs had the benefit of attorneys who are highly experienced in complex class action litigation, especially data breaches. *See* Joint Decl. ¶ 4 and Exhibits A–C, thereto (Class Counsel resumes). As evidenced by Class Counsel's extensive experience in data breach class actions, Class Counsel are competent, well-respected, and more than capable of prosecuting this Action from inception to completion. *Id.*

Class Counsel zealously pursued this matter and acted in the best interests of the Settlement Class, which enabled Class Counsel to achieve this favorable Settlement.

Similarly, Plaintiffs were committed to acting in the best interests of the Settlement Class. *Id*. ¶ 5. Plaintiffs remained informed on the progress of the litigation, were available as needed throughout the litigation and subsequent settlement, produced documents, and reviewed key terms of the Settlement. *Id*. ¶ 5. Plaintiffs made all necessary decisions required in support of the best interests of the Settlement Class. *Id*.

Accordingly, Rule 23(e)(2)(B), Rule 23(e)(2)(A), and the first *Jones* factor are met.

b. <u>*Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation</u>

Serious questions of law and fact weigh "in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).

Plaintiffs believe the claims asserted in the operative complaint are meritorious; however, they also acknowledge that continuing the litigation poses significant risks and additional costs. Due at least in part to their cutting-edge nature and the rapidly evolving law, data privacy cases like this one generally face substantial hurdles – even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.,* 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data incident cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Although Plaintiffs' case largely survived a motion to dismiss, should the litigation continue, Plaintiffs will likely be tasked with surviving a motion for summary judgment. Class certification is another

hurdle that would have to be met – and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 293 F.R.D. 21 (D. Me. 2013).

In sum, success at trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. Because of this, the parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. *Lucas,* 234 F.R.D. at 693–94**Error! Bookmark not defined.**; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 625 F. Supp. 2d at 1138 ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . .").

Thus, the second *Jones* factor militates in favor of preliminary approval.

c. *Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation

Most importantly, the Settlement guarantees the Class immediate relief from alleged harm as well as protection from alleged future harm, which outweighs the mere possibility of future relief through lengthy and expensive litigation. Settlement Class Members can easily submit a claim for one or both of the cash Settlement Payments described above. On top of that, Class Members are eligible to receive credit monitoring. This recovery is objectively substantial.

If the litigation were to continue, it would involve considerable time and expense. Motions for summary judgment, class certification, and *Daubert* motions would all be hotly disputed, and Defendant would likely appeal any adverse verdict. Plaintiffs face continued risk if they reach for the prospect of greater relief through further litigation. Thus, Plaintiffs' options were not between settlement today and a final resolution before a jury sometime in the near future, but between

settlement today and likely many years of spending millions of dollars and reducing the amount of any recovery (or obtaining none at all). As one court aptly observed, it is sometimes better "to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana),* 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and internal quotation marks omitted). By reaching a favorable settlement prior to trial, Plaintiffs ensure a risk-free recovery for the Settlement Class.

Accordingly, Rule 23(e)(2)(C)(i) is satisfied, as well as the third *Jones* factor.

d. *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Parties and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees Are Fair and Reasonable

The Settlement is supported by Plaintiffs, Defendant, and their respective counsel, who are each highly familiar with the strengths and weaknesses of this litigation. Settlement Class Members will have the opportunity to weigh in on the Settlement at the Final Fairness Hearing if the Court grants preliminary approval.

Class Counsel have carefully evaluated the Settlement Agreement and believe it provides exceptional value to Plaintiffs and the Settlement Class. Joint Decl. ¶ 6. As a result of the Settlement, these benefits will be made immediately available to the Settlement Class without the delay or risk attendant with continued litigation. Indeed, there is no guarantee that the Settlement Class would secure a better outcome were the Action prosecuted through trial. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight" and supports approval of the Settlement. *Marcus v. State of Kansas, Dep't of Revenue,* 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002); *accord Lucas,* 234 F.R.D. at 695; *Rhodes,* 308 F.R.D. at 667.

Moreover, the proposed amount of attorneys' fees is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees equal to one-third of the common fund plus reimbursement of costs reasonably incurred in the prosecution of this action (up to $50,000), as well as Service Awards for Settlement Class Representatives in the amount of $2,500 each. As will be discussed more fully in Plaintiffs' forthcoming motion for attorneys' fees, a one-third fee award is consistent with awards approved in similar data breach class action settlements and is reasonable under the circumstances of this action. Plaintiffs will fully brief their fee request by separate motion filed no later than 14 days prior to the deadline for Settlement Class Members to object to or exclude themselves from the Settlement. Accordingly, the requested Fee Award and Costs, and Service Awards do not present a barrier to preliminary approval.

Accordingly, the final *Jones* factor and Rule 23(e)(2)(C)(iii) are met.

e. Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement

Rule 23(e)(2)(D) requires the Court to confirm the class action settlement treats all class members equitably. The proposed Settlement is a common-fund settlement, without any preferential treatment of the named Plaintiffs or any segments of the Settlement Class. With this proposed Settlement, Settlement Class Members are able to recover damages for injuries allegedly caused by the Data Incident and may also receive credit monitoring services. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses allows Settlement Class Members to obtain relief based upon the specific types of damages they allegedly incurred and treats every claimant in those categories equally relative to each other.

Class Counsel also intend to apply for Service Awards for the Settlement Class Representatives. Courts have held that it is appropriate to make a modest payment in recognition

of the services that such plaintiffs perform in successful class litigation. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 467 (10th Cir. 2017); *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958–59 (9th Cir. 2009). A Service Award to each Plaintiff is appropriate here given the efforts and participation of Plaintiffs in the litigation and does not constitute preferential treatment.

As evidenced by the foregoing, the allocation plan is effective and is "rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld v. Lenich,* No. 18-CV-6720-NGGPK, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021). This factor supports preliminary settlement approval.

f. Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims." Here, the plan of allocation is straightforward and is the result of extensive negotiation between highly competent counsel, with the input of an experienced data breach class action mediator. Joint Decl. ¶ 7. As set forth above, the Settlement makes available to all Settlement Class Members three years of credit monitoring, available to Settlement Class Members who need only submit a valid claim. The Settlement also allows participants to elect one or both cash Settlement Payments, i.e., the documented losses payment or Pro Rata Cash Payment. All claims will be processed by the Claims Administrator, with the oversight of Class Counsel. The proposed Settlement is effective for distributing relief.

g. Rule 23(e)(2)(C)(iv): There are No Agreements Required to be Identified

Lastly, other than the Settlement Agreement, there are no other agreements required to be identified under Rule 23(e)(3).

## V. THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION

At the preliminary approval stage, the Court should also determine whether it will likely be able to certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 593 (1997). As demonstrated below, the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

### A. THE RULE 23(a) FACTORS ARE MET

Under Rule 23(a)**Error! Bookmark not defined.**, a class action may be maintained where: (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) (citing Rule 23(a)).

#### 1. The Settlement Class is So Numerous that Joinder is Impracticable

Numerosity requires "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.,* 585 F.2d 432, 436 (10th Cir. 1978); *see also Circle v. Jim Walter Homes, Inc.,* 535 F.2d 583, 585 (10th Cir. 1976) (finding class with 358 members to be sufficiently numerous).

Here, the proposed Settlement Class surpasses the threshold requirement to establish numerosity, as it includes hundreds of thousands of individuals. Numerosity is satisfied for the purposes of settlement.

**2. There Are Common Questions of Law and Fact**

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." This requirement does not mandate commonality on every issue. *Lane v. Page,* 272 F.R.D. 558, 575 (D.N.M. 2011). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010). The Supreme Court has stated that the Rule 23(a)(2) commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, there are myriad common questions of law and fact, including, *inter alia,* whether Defendant owed a duty to Plaintiffs and Class Members to adequately protect their sensitive information and to provide timely and accurate notice of the Data Incident to Plaintiffs and the Class; whether Defendant breached these duties; whether Defendant knew or should have known that its computer and network systems were allegedly vulnerable to attack; whether Defendant's alleged conduct, including its alleged failure to act, was the proximate cause of the Data Incident and any resulting exfiltration of the sensitive information; whether Defendant has taken adequate preventive measures to ensure the Plaintiffs and Class Members will not experience further harm;

whether Plaintiffs and Class Members suffered injury as a proximate result of Defendant's conduct or failure to act; and whether Plaintiffs and the Class are entitled to recover damages and other relief from Defendant.

Resolving the allegations surrounding Defendant's alleged conduct relating to the Data Incident will resolve issues that are "central to the validity of each one of the claims in one stroke." *Id.* Commonality is satisfied for the purposes of settlement.

### 3. Plaintiffs' Claims and the Defenses are Typical of the Settlement Class

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.,* 564 U.S. at 350.

Here, Plaintiffs' and Settlement Class Members' claims are predicated on Defendant's alleged conduct with respect to the Data Incident. Plaintiffs' claims are "virtually identical to those of the [C]lass because [they] arise from the same conduct—each Plaintiff's claim stems from [Defendant's] security measures and whether they were adequate to protect [] [Plaintiffs'] sensitive data." *In re Onix Group, LLC Data Breach Litig.*, No. 23-2288, 2024 WL 3015528, at *3 (E.D. Pa.

June 14, 2024) (citation omitted). Accordingly, the typicality requirement is satisfied for the purposes of settlement.

**4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class**

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." *Id.*"The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego v. Los Arcos Mexican Restaurants, Inc.,* 313 F.R.D. 117, 126 (D. Colo. 2016) (citing *Maez v. Springs Auto. Group, LLC,* 268 F.R.D. 391, 396 (D. Colo. 2010)). Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.; see also Amchem Prods., Inc.,* 521 U.S. at 625–26. At this stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.

Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for alleged injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for the same reimbursements upon submitting a Valid Claim.

Further, Class Counsel have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Joint Decl. ¶ 4 & Exs. A-C. Moreover, they have put their collective experience to use in negotiating a Settlement

that guarantees immediate relief to Class Members. Thus, the requirements of Rule 23(a) are satisfied for the purposes of settlement.

**B. THE SETTLEMENT CLASS SATISFIES RULE 23(b)(3)**

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods., Inc.,* 521 U.S. at 618.

**1. Common Questions Predominate**

Plaintiffs satisfy the predominance requirement because questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to the Settlement Class Members. Most notably, all Plaintiffs and Settlement Class Members were affected by the same Data Incident and allegedly had their Personal Information exposed. Here, the same alleged course of conduct by Defendant's allegedly inadequate data security, which permitted the Data Incident to occur, gives rise to all Settlement Class Members' claims. As set forth above, there are numerous common issues relating to Defendant's liability at the core of this action which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is, therefore, satisfied for the purposes of settlement.

### 2. A Class Action is the Superior Method for Adjudication

Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. The superiority requirement is easily satisfied here where there are a large number of Settlement Class Members with small damages stemming from the same course of conduct. According to the Tenth Circuit, "class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co., LLC v. Hutchens,* 773 F.3d 1076, 1096 (10th Cir. 2014).

The Settlement Agreement and Notice Program provide Settlement Class Members with the ability to obtain prompt, predictable, and certain relief. There are also well-defined administrative procedures to assure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. The Settlement will also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in many thousands of individualized trials against Defendant, by going forward with this litigation as a class action. Additionally, because the parties seek to resolve this action through a Settlement, any manageability issues that could have arisen at trial are marginalized. Finally, the complexity of the claims and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3)are satisfied for the purposes of settlement, certification of the proposed Settlement Class is appropriate.

## VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise, regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). This standard does not require that every class member actually receive notice. *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.,* 271 F. App'x. 41, 44 (2d Cir. 2008).

Here, Defendant will provide the Claims Administrator with the list of the names and addresses of all Settlement Class Members in its records. The Claims Administrator will then send the Short Notice to Settlement Class Members by U.S. Mail or Email Notice within 30 days of the Preliminary Approval Order. SA ¶ 26. Settlement Class Members will have 90 days after the Notice Deadline to submit a Claim Form in order to be eligible for benefits. *Id.* ¶ 8.

The Claims Administrator will also establish a Settlement Website to which Settlement Class Members may refer for information about the Settlement, submit Claim Forms, ask questions, and review important settlement documents and deadlines. SA ¶¶ 45, 76(c). This is in addition to maintaining a toll-free telephone number and P.O. Box that Settlement Class Members can use to seek additional information regarding the Settlement. *Id.* ¶ 76(d).

The proposed Notices are plain and easily understood. Joint Decl. ¶ 8. Specifically, the Notices describe the claims brought in the action, as well as the relief provided under the

Settlement, along with Settlement Class Members' rights and options pertaining thereto. Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances. *Id*.

## VII. CONCLUSION

For the reasons stated herein, Plaintiffs request that the Court grant this motion for preliminary approval and enter an order substantially similar to the proposed Preliminary Approval Order, which is attached as Exhibit B to the Settlement Agreement and submitted herewith.

Dated: August 24, 2026

Respectfully submitted,

By: /s/___________

Brittany Resch*
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com

Andrew W. Ferich*
AHDOOT & WOLFSON PC
201 King Of Prussia Rd Ste 650
Radnor, PA 19087
Tel: (310) 474-9111
aferich@ahdootwolfson.com

Anthony L. Parkhill*
BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
aparkhill@barnowlaw.com

*Proposed Settlement Class Counsel*

Jason R. Hull (11202)
MARSHALL OLSON & HULL, PC
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
Telephone: (801) 456-7655
jhull@mohtrail.com

Jennifer Fraser Parrish (11207)
James E. Magleby (7247)
MAGLEBY CATAXINOS, PC
141 West Pierpont Avenue
Salt Lake City, UT 84101
Telephone: (801) 359-9000
Facsimile: (801) 359-9011
parrish@mcpc.law
magleby@mcpc.law

*Local Counsel*