UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LAZARO STERN, CELESTE ALLEN, LISA KUCHERRY, PETER SMITH, SHARON THOMPSON, and CHARLY BATES, individually and on behalf of all others similarly situated.,<br><br>Plaintiffs,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [ECF NO. 112] PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Case No. 2:24-cv-00015-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion").[1]

## BACKGROUND

### *Factual and Procedural Background*

This case concerns a data breach incident that Defendant Academy Mortgage Corporation ("Academy") became aware of in March 2023.[2] After concluding that personal data may have been accessed—including first and last names, social security numbers, and birthdates—Academy began notifying individuals that their data may have been involved in the incident in December 2023.[3] Thereafter, several lawsuits were filed against Academy in this

[1] Pls.'s Unopposed Mot. for Prelim. Approval of Class Action Settlement ("Motion"), ECF No. 112, filed Aug. 25, 2026.
[2] Proposed Settlement Agreement ("Settlement Agreement") 1, ECF No. 112-1, filed Aug. 25, 2026.
[3] *Id.*

district, which were then consolidated into the present action.[4] Plaintiffs eventually filed their second amended complaint in May 2025, alleging various common law and statutory claims.[5] After the court granted in part and denied in part Academy's motion to dismiss the second amended complaint,[6] the parties attended two full-day mediations. Following the second, the parties notified the court that a settlement agreement in principle had been reached.[7] Then, on August 25, 2026, Plaintiffs filed the Motion requesting approval of the settlement agreement.[8]

***Proposed Settlement Agreement***

The parties' proposed settlement agreement is attached in its entirety to the Motion as an exhibit.[9] Under the relevant terms of the agreement, the proposed class is defined for settlement purposes as "all living persons residing in the United States who were notified by Defendant that their Personal Information may have been impacted by the Data Incident."[10] Plaintiffs Lazaro Stern, Celeste Allen, Lisa Kucherry, Peter Smith, Sharon Thompson, and Charly Bates are designated as the settlement class representatives.[11]

The agreement creates a common settlement fund of $1,995,000 that will be used to pay—in the following order—the costs of claim administration, taxes incurred, service awards to the class representatives, any fee and costs award, and then, settlement class member benefits.[12]

---

[4] Order Granting Mot. to Consolidate Related Actions, ECF No. 40, filed June 18, 2024.
[5] *See generally* Second Am. Consolidated Class Action Compl. ("Complaint"), ECF No. 74, filed May 27, 2025.
[6] Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss, ECF No. 79, filed Oct. 8, 2025.
[7] Joint Notice of Settlement and Req. to Stay, ECF No. 103, filed July 8, 2026.
[8] *See* Motion.
[9] *See* Settlement Agreement.
[10] *Id.* 12. ("The Settlement Class specifically excludes: (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff; (iii) all individuals who make a timely Request for Exclusion from this proceeding using the correct protocol for opting out; and (iv) the attorneys representing the Settling Parties in the Litigation.").
[11] *Id.* 10.
[12] *Id.* 16.

As a part of these benefits, each class member is entitled to reimbursement for documented losses up to $3,000, three years of credit monitoring services, and a pro rata cash payment—with members who are California residents receiving a greater payment to account for their statutory damages.[13] Additionally, Plaintiffs intend to seek court approval of attorneys' fees equal to one-third of the common fund and costs up to $50,000, as well as $2,500 service awards for each of the class representatives.[14]

The agreement appoints Kroll Settlement Administration as claim administrator to administer the settlement and provide notice to class members.[15] The proposed notice program requires the claim administrator to provide notice to class members via United States mail.[16] And the proposed notice provides information about the claims brought in the action, the settlement terms, how to submit claims, how to opt out, and how to object.[17] The claim administrator will also maintain a settlement website where class members can find information about the settlement and submit claims, along with a toll-free help line for questions.[18]

**STANDARD**

Under Rule 23 of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."[19] "Preliminary approval of a proposed settlement is the first of two steps required before a class action may be

[13] *Id.* 17–19.
[14] *Id.* 33; Motion 16.
[15] Settlement Agreement 7.
[16] *Id.* 28, 74–77.
[17] *Id.* 74–77.
[18] *Id.* 13, 21.
[19] Fed. R. Civ. P. 23(e).

settled."[20] If preliminary approval is granted, the court moves to the second step where "it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement."[21] Rule 23(e) requires a court to grant preliminary approval if the parties show that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[22]

## DISCUSSION

### I. Likely Approval Under Rule 23(e)(2)

Under Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, the court must grant preliminary approval to a class action settlement if the parties show that the proposal would likely be approved under Rule 23(e)(2).[23] Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and a "finding that it is fair, reasonable and adequate."[24] In determining whether an agreement is "fair, reasonable, and adequate," the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other.[25]

In addition, the Tenth Circuit requires the court to consider the factors set forth in *Jones v. Nuclear Pharmacy, Inc.*:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere

[20] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).
[21] *Id.*
[22] Fed. R. Civ. P. 23(e)(1)(B).
[23] *Id.*
[24] Fed. R. Civ. P. 23(e)(2).
[25] *Id.*

> possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[26]

While the "fair, reasonable, and adequate" standard must be satisfied before the final approval of a settlement agreement, at this stage, the parties need only show that the agreement is likely to be approved under the standard.[27] Preliminary approval of the agreement, therefore, "is at most a determination that there is 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."[28] As such, generally, "a proposed settlement of a class action should . . . be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives."[29]

**A. Rule 23(e)(2) Factors**

**1. Adequate Representation**

The first Rule 23(e)(2) factor requires the court to consider whether the class representatives and class counsel have adequately represented the class.[30] Here, there is no indication that the class representatives and class counsel have not adequately represented the class. Each class representative's claims and injuries arose out of the same data breach incident as the rest of the class.[31] The representatives also appear to have been engaged throughout the litigation and involved in all necessary decisions.[32] Further, class counsel are demonstrably

[26] *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *see also Tenille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (laying out the same four factors).
[27] Fed. R. Civ. P. 23(e)(1)(B).
[28] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (citation modified).
[29] *Id.* (citation modified).
[30] Fed. R. Civ. P. 23(e)(2)(A).
[31] *See* Complaint 7–22.
[32] *See* Joint Declaration of Counsel ("Declaration") ¶ 5, ECF No. 112-2, filed Aug. 25, 2026.

experienced in class action litigation and have been involved in other data breach class actions.[33] Thus, the court finds that this factor is likely satisfied.

### 2. Arm's-Length Negotiation

The second Rule 23(e)(2) factor requires the court to consider whether the proposal was negotiated at arm's length.[34] Here, the parties have vigorously litigated this case for years, and the settlement agreement appears to be the product of two full-day mediations with experienced, neutral mediators.[35] Together, these facts support the conclusion that this factor is met and would likely weigh in favor of approval.[36]

### 3. Adequate Relief

The third Rule 23(e)(2) factor asks whether the proposed settlement provides adequate relief, requiring the court to consider:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).[37]

In this case, there is no indication that the relief provided is inadequate. Plaintiffs' counsel, who are experienced in data breach class actions, attest that the proposed settlement "provides

---

[33] *See id.* ¶ 4.
[34] Fed. R. Civ. P. 23(e)(2)(B).
[35] *See* Motion 11–12; Declaration ¶¶ 2–3.
[36] *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1241 (D.N.M. 2012) ("When examining whether a settlement was fairly and honestly negotiated, district courts within the Tenth Circuit often examine whether the parties have vigorously advocated their respective positions throughout the pendency of the case." (citation modified)); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); 2 McLaughlin on Class Actions § 6:7 (22nd ed. 2025) ("A settlement reached after a supervised mediation weighs in favor of a finding of non-collusiveness . . . .").
[37] Fed. R. Civ. P. 23(e)(2)(C).

exceptional value to Plaintiffs and the Settlement Class."[38] They further indicate that if litigation were to continue, Plaintiffs' claims remain hotly contested and resolution would involve considerable time and expense—including motions for summary judgment, class certification, *Daubert* motions, and likely appeals.[39] Finally, the proposed amount of attorneys' fees to be later approved by the court (one-third of the common fund) falls within the range the Tenth Circuit has found reasonable.[40] Accordingly, the court finds that this factor is likely satisfied.

**4. Equitable Treatment**

Finally, the fourth Rule 23(e)(2) asks whether the settlement treats class members equitably relative to each other.[41] Here, the proposed settlement creates a common fund that does not give preferential treatment to any segments of the settlement class, besides accounting for the California class members' statutory damages.[42] And although Plaintiffs' counsel intend to apply for service awards for the class representatives, courts have approved such awards in recognition of the efforts and participation of named plaintiffs.[43] Therefore, the court finds that the Rule 23(e)(2) factors together likely weigh in favor of approval.

---

[38] Declaration ¶¶ 5–6.
[39] *See* Motion 14–15.
[40] *See Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-CV-0304, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund." (citation modified)); *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263–64 (10th Cir. 2023) ("[A]wards [from common fund settlements] across a range of percentages may be reasonable.").
[41] Fed. R. Civ. P. 23(e)(2)(D).
[42] *See* Settlement Agreement 16–21.
[43] *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467–68 (10th Cir. 2017); *Krant v. UnitedLex Corp.*, No. 23-2443, 2024 WL 5187565, at *10 (D. Kan. Dec. 20, 2024) ("At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their services to the class." (citation modified)).

### B. *Jones* Factors

The proposed agreement is also likely to satisfy the *Jones* factors. First, as discussed above, the settlement was reached by experienced counsel after two full days of mediation with neutral mediators, which likely satisfies the first factor.[44] Second, the outcome of the litigation is not certain, as Academy admits no liability for the data breach but some of Plaintiffs' claims have survived a motion to dismiss.[45] Third, as previously discussed, the settlement provides the class members immediate relief as opposed to an uncertain recovery after more litigation and costs. And fourth, Plaintiffs' counsel, who have experience in data breach class actions, represent that the settlement agreement provides "exceptional value to Plaintiffs and the Settlement Class."[46]

Thus, after applying the relevant factors to the agreement, and in the absence of any obvious deficiencies, collusion, or preferential treatment, the proposed settlement is likely to satisfy the "fair, reasonable, and adequate" standard.[47]

## II. Class Certification

Next, the court must find that it would likely be able to "certify the class for purposes of judgment on the proposal" before it can direct notice to the class.[48] Under Rule 23(a), a class action may only be certified if:

---

[44] *See Lucas v. Kmart Corp.*, 234 F.R.D 688, 693 (D. Colo. 2008) (noting importance of vigorous litigation and arm's length negotiations after significant discovery in the first Jones factor analysis).
[45] *See* Settlement Agreement 3–5.
[46] Declaration ¶¶ 4, 6.
[47] *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. at 492 ("The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." (citation modified)).
[48] Fed. R. Civ. P. 23(e)(1)(B).

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[49]

Once these four elements are satisfied, the proposed class must also meet the requirements of one of the three types of class actions provided in Rule 23(b).[50]

### A. Rule 23(a) Elements

Turning to the Rule 23(a) elements, the first requires that a class be "so numerous that that joinder of all members is impracticable."[51] Here, the parties propose a class of all persons who were notified by Academy of the data breach incident, approximately 285,000 individuals.[52] Joinder of over two hundred thousand plaintiffs is plainly impracticable.[53] Thus, the court finds that this element is likely satisfied.

The next two elements require that a class have common questions of law or fact and that the class representative's claims are typical of the class's claims.[54] In this case, the claims all arise from a single data breach incident, and as such, questions about law and fact—e.g., whether Academy owed class members a duty to safeguard their information, and whether it breached that duty—are common to all class members.[55] Similarly, the class representatives' claims arise from the same data breach incident, concern the same conduct by Academy related to the

---

[49] Fed. R. Civ. P. 23(a).
[50] *See* Fed. R. Civ. P. 23(b).
[51] Fed. R. Civ. P. 23(a)(1).
[52] Settlement Agreement 1, 12.
[53] *See Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1976) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class.").
[54] Fed. R. Civ. P. 23(a)(2)–(3); *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge.").
[55] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (stating that the Rule 23(a)(2) commonality requirement is satisfied where plaintiffs assert claims that "depend on a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

incident, and, therefore, appear to be virtually identical to those of the class.[56] Accordingly, the court finds that the second and third Rule 23(a) elements are likely satisfied.

Finally, the fourth element requires the court to determine whether "the representative parties will fairly and adequately protect the interests of the class."[57] The Tenth Circuit has provided two questions that determine the legal adequacy of class representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[58] As previously discussed in the Rule 23(e)(2) analysis, there are no apparent conflicts of interest, and Plaintiffs and their counsel appear to have vigorously litigated this case and participated fully in settlement negotiations.[59] Thus, the court finds that this element is also likely satisfied.

**B. Rule 23(b)**

Having determined that the Rule 23(a) elements are likely satisfied, the court turns to Rule 23(b). The parties propose a class action under Rule 23(b)(3), which allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[60]

---

[56] *See* Complaint 7–22; *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) ("Every member of the class need not be in a situation identical to that of the named plaintiff to meet Rule 23(a)'s commonality or typicality requirements." (citation modified)).
[57] Fed. R. Civ. P. 23(a)(4).
[58] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation modified).
[59] *See* Declaration ¶¶ 2–3, 5.
[60] Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

Under Rule 23(b)(3)'s predominance requirement, "plaintiffs must show common questions subject to generalized, classwide proof *predominate* over individual questions."[61] Further, "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."[62] Here, all Plaintiffs and class members were impacted by the same data breach incident and allegedly had their personal data exposed.[63] Their claims center around the same course of conduct by Academy—e.g., its alleged inadequate data security and failure to act following the breach—and whether this course of conduct proximately caused Plaintiffs and class members any injury.[64] These liability-related issues generally are the same for all class members and are among the most important issues in the case. Accordingly, the court finds that these common questions likely predominate over individual questions.

**2. Superiority**

Rule 23(b)(3)'s superiority requirement asks whether "a class action would be superior to -- not merely just as good as or more convenient than -- all other available procedural mechanisms."[65] Class treatment is superior when it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing

[61] *Dunn v. Santa Fe Nat. Tobacco Co., Inc.*, 185 F.4th 999, 1017 (10th Cir. 2026) (citation modified).
[62] *Id.* (citation modified) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).
[63] *See generally* Complaint.
[64] *Id.*
[65] *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 349 F.R.D. 365, 409 (D.N.M. 2025).

procedural fairness or bringing about other undesirable results."[66] Here, the superiority requirement is likely satisfied given the large proposed class, complexity of the claims, and the high cost of individualized litigation for relatively small injuries.[67] Therefore, applying both Rule 23(a) and Rule 23(b)(3), the court finds it likely that it will be able to certify the class for settlement purposes.[68]

## III. Notice and Appointment

The parties also ask the court to approve the proposed notice program and to appoint a claims administrator, class counsel, and class representatives.[69] Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."[70] Rule 23(c)(2)(B) further requires that for classes certified for settlement purposes under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[71] This notice can be provided "by one or more of the following: United States mail, electronic means, or other appropriate means." And "in plain easily understood language," the notice must "clearly and concisely" state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for

---

[66] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).
[67] *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (citation modified)).
[68] Fed. R. Civ. P. 23(e)(1)(B).
[69] *See generally* Motion.
[70] Fed. R. Civ. P. 23(e)(1)(B).
[71] Fed. R. Civ. P. 23(c)(2)(B).

> requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).[72]

A court that certifies a class must also "appoint class counsel."[73] In appointing such counsel, the court must consider the counsel's work with claims in the action, the counsel's experience with similar cases and knowledge of the law, and the resources the counsel will commit to the representation.[74]

Here, the court approves of the proposed notice program, finding that it meets the requirements of Rule 23(e)(1)(B) and Rule 23(c)(2)(B).[75] The proposed notice program directs Academy to provide the claims administrator with the names and addresses of all settlement class members, to whom the claims administrator will then send notice by United States mail.[76] The proposed notices provide sufficient information—including the information required by Rule 23(c)(2)(B)—for class members to understand and exercise their rights.[77] The proposed notice program also creates a settlement website, at which settlement class members can access more information and submit claims, and a toll-free help line, where questions can be directed.[78]

Additionally, the court approves the parties' request to appoint Kroll Settlement Administration as claims administrator, Brittany Resch, Anthony L Parkill, and Andrew W. Ferich as settlement class counsel, and Plaintiffs as settlement class representatives. The

---

[72] *Id.*
[73] Fed. R. Civ. P. 23(g)(1).
[74] *Id.*
[75] Settlement Agreement 28–32.
[76] *Id.* 28. Prior to mailing the claims administrator is required to update all addresses through the National Change of Address database. *Id.*
[77] *See id.* 65–72, 74–77.
[78] *Id.* 29.

proposed settlement class counsel have apparent experience with similar claims and the relevant law, along with substantial firm resources and knowledge of this case.[79]

In sum, the court finds that it will likely be able to approve the proposed settlement agreement under Rule 23(e)(2) and grants its preliminary approval. The court also finds that it can likely certify the class under Rule 23(a) and Rule 23(b)(3) and grants the settlement class preliminary certification. Additionally, the court approves the proposed notice program—including the proposed notice documents, schedule, and procedures for processing claims and facilitating opt-outs and objections.[80] The court appoints Kroll Settlement Administration as the claims administrator, Brittany Resch, Anthony L Parkill, and Andrew W. Ferich as settlement class counsel, and Plaintiffs as settlement class representatives. This action will be stayed until the court has made a final approval determination following the settlement fairness hearing.

**ORDER**

Plaintiffs' [112] Unopposed Motion for Preliminary Approval of Class Action Settlement is GRANTED.

Signed September 29, 2026.

BY THE COURT

David Barlow
United States District Judge

[79] *See generally* Declaration.
[80] Settlement Agreement 28–32.